**In re Robert R. KLAPP and Norma Klapp, Debtors.**

**Bankruptcy No. BK–87–05557–B.**

United States Bankruptcy Court, W.D. Oklahoma.

Dec. 11, 1987.

Melinda Monnet and John B. Monnet, Oklahoma City, Okl., for debtors.

Robert H. Jones, Shawnee, Okl., for creditors James B. Walling and Janet Walling.

## ORDER ON CONFIRMATION OF CHAPTER 13 PLAN

PAUL B. LINDSEY, Bankruptcy Judge.

### I

The material facts in this Chapter 13 proceeding are uncontested. On June 19, 1984, in connection with the purchase of a residence in Asher, Oklahoma, debtors executed a note and mortgage to James B. Walling and Janet Walling ("objecting creditors"). The note, in the principal amount of $20,000, called for equal monthly payments in the amount of $264.30, to amortize the principal amount of the note, with interest at the rate of ten percent per annum, over a period of ten years. The mortgage, of course, was given to secure the note. Debtors commenced making the required payments in July 1984.

On April 10, 1985, debtors filed their Chapter 7 bankruptcy petition in this court, No. 85–01258, scheduling the note and mortgage and claiming the property secured as their homestead. No reaffirmation agreement of the debt under 11 U.S.C. § 524(c) was filed or otherwise entered into and a discharge was subsequently granted to debtors.

Debtors nevertheless continued to make, and objecting creditors continued to accept, monthly debt service payments in accordance with the provisions of the promissory note. Between the filing of the Chapter 7 petition and February 7, 1987, debtors made and objecting creditors accepted, payments on the promissory note of approximately $8,200, $5,700 of which were applied to interest, $2,400 to principal and less than $100 to the payment of insurance premiums.

After February 7, 1987, no further payments were made. On May 1, 1987, objecting creditors filed an action against debtors in the District Court of Pottawatomie County, Oklahoma, seeking judgment for the principal then due and owing, $16,-521.41, interest at ten percent per annum from February 15, 1987, reasonable attorney's fees, and seeking further judgment foreclosing the lien of the mortgage. Judgment was subsequently rendered in favor of objecting creditors and the real property was ordered sold with appraisement. The property was sold at a judicial sale on July 29, 1987, to the objecting creditors, with a return of sale being made on that day. On the following day, July 30, 1987, debtors filed herein their Chapter 13 bankruptcy petition.

Debtors have proposed a Chapter 13 plan, approximately 38 months in duration, under which objecting creditors would be paid $20,284.49 in the aggregate, including the principal amount of the note, $16,-521.41; attorney fees awarded in the foreclosure action, $2,478.21; insurance prepaid by objecting creditors in the amount of $265; accrued interest as of the date of judgment in the amount of $742.33 and court costs incurred in the foreclosure action in the amount of $277.54.

Objecting creditors filed their objection to debtors' plan and their motion to lift the 11 U.S.C. § 362 automatic stay in order to permit the foreclosure action to proceed to confirmation of the judicial sale. Objecting creditors contend that debtors' plan improperly seeks to modify the rights of objecting creditors, in violation of 11 U.S.C. § 1322(b)(2), and seek to support their contention with two basic arguments.

### II

First, it is contended that Chapter 13 may not be employed to force upon a creditor the reaffirmation of a debt not reaffirmed and subsequently discharged in a previous Chapter 7 proceeding.

In support of this contention, objecting creditors rely on *In re Binford,* 53 B.R. 307 (Bankr.W.D.Ky.1985) and *In re McKinstry,*

56 B.R. 191 (Bankr.D.Vt.1986). In both cases, as here, debtors had previously, in Chapter 7 proceedings, scheduled and discharged the indebtedness secured by a real estate mortgage. Thereafter, they filed Chapter 13 petitions and sought to cure arrearages on the debt while continuing regular monthly amortization payments.

In *Binford,* the court first addresses the interpretation, in *In re Farmer,* 13 B.R. 319 (Bankr.M.D.Fla.1981), that the discharge of a debt leaves the security agreement in the nature of an executory contract with obligations on both sides, and that if the debtor continues regular payments, the creditor agrees not to exercise its right of repossession or foreclosure. The *Binford* court rejects this conclusion, then finds that the naked lien, after discharge of the underlying debt, imposes no obligation upon the debtor, and that the same therefore does not constitute a "claim" against the estate as defined in 11 U.S.C. § 101(4). The court cites *In re Brown,* 52 B.R. 6 (Bankr.S.D.Ohio 1985) for the proposition that a plan can only deal with creditors, i.e., entities holding a claim against the debtor. 11 U.S.C. § 101(9). Finally, the court holds that a Chapter 13 debtor will not be permitted to do indirectly what he cannot do directly, i.e., compel reaffirmation without the consent of the creditor of a previously discharged debt.

In *McKinstry, supra,* the same result is reached, citing and quoting from, *Binford, supra.* In that case, the debtor apparently also urged that a novation had occurred by reason of subsequent conduct. The *McKinstry* court, noting that novation was suggested as a solution to the problem in *In the Matter of Fryer,* 47 B.R. 180 (Bankr.S.D.Ohio 1985), stated that both parties were powerless to effect a novation of the debt, since novation requires a valid existing contract, a circumstance not present when the debt has been discharged.

Representative of what appears to be a minority view on this question are *In re Lewis,* 63 B.R. 90 (Bankr.E.D.Pa.1986) and *Matter of Lagasse,* 66 B.R. 41 (Bankr.D. Conn.1986). In *Lewis,* where the facts are remarkably similar to those in the case at bar, the court analyzes definitional changes effected in the 1978 adoption of the Bankruptcy Code and concludes that by virtue of the breadth of the definition of the term "claim" in 11 U.S.C. § 101(4), that term may include a creditor's encumbrance against property of the estate although there is no *in personam* liability against the debtor. The court holds that since debtors' obligation to the creditor is a claim, they may provide for payment of that claim in a Chapter 13 plan.

The *Lewis* court does not discuss the contrary view as represented by *Binford* and *McKinstry, supra.*

In *Lagasse,* the court concedes that the *Binford/McKinstry* view constitutes the majority view "to date," and cites *Lewis, supra,* to the contrary. The *Lagasse* court also discusses the definition of "claim" as found in § 101(4) and the rule of construction found in 11 U.S.C. § 102(2), providing that "'claim against the debtor' includes claim against property of the debtor." The court then recites portions of the legislative history of § 102(2), indicating that the paragraph was intended to cover nonrecourse loan agreements where the creditor's only rights would be against the property of the debtor, and not against the debtor personally.

The *Lagasse* court then holds that Chapter 13 debtors are not barred as a matter of law from including in a plan the treatment of a mortgage claim where the underlying obligation of the mortgage had been discharged in a prior Chapter 7 bankruptcy case.

It is this court's opinion that the view represented by *Lewis* and *Lagasse,* although apparently in the minority, is clearly the better view. The court finds no controlling authority for either view in this district or in the Tenth Circuit. Thus, the court holds that a mortgage securing a debt previously discharged in Chapter 7 proceedings and thus constituting a nonrecourse obligation, may be scheduled and treated in a Chapter 13 plan.

### III

■ As their second contention, objecting creditors urge that, to the extent debt-

ors possessed an equity of redemption in the property, the same was extinguished when the judicial sale was held. They rely upon *Payne v. Long–Bell Lumber Co.,* 9 Okl. 683, 60 P. 235 (1900); *Harris v. Stevens,* 84 Okl. 196, 202 P. 1024 (1921), and their progeny. Further, they rely on *Board of County Commissioners of Tulsa County, et al., v. Leslie,* a decision of the Oklahoma Court of Appeals dated May 12, 1987, and published in volume 58, number 19, OBAJ. This Court of Appeals decision is relied upon by objecting creditors as authority for the proposition that the equity of redemption is extinguished by judicial sale. Apart from the fact that such is not the holding of the case, this court notes that under 20 O.S. 1981, Ch. 1A, §§ 30.5 and 30.14, no opinion of the Court of Appeals is binding or may be cited as precedent unless approved by the Supreme Court for publication in the official reporter. No such approval has been obtained and, in fact, a petition for certiorari to the Supreme Court of Oklahoma was granted on November 5, 1987. Citation to and reliance upon that Court of Appeals decision, therefore, is misplaced.

Debtors rely upon *Lincoln Mortgage Investors v. Cook,* 659 P.2d 925 (Okl.1982); *Mills v. Reneau,* 411 P.2d 516, 520 (Okl. 1965); and this court's Memorandum Decision and Order in *In re Anderson,* 73 B.R. 993 (Bankr.W.D.Okla.1987).

■ Although admittedly in dictum, the court in *Lincoln Mortgage* unequivocally states that the right of redemption "is exercisable any time between default and confirmation of the Sheriff's sale," citing 42 O.S. 1981, § 18 and *Mills.* This court, in *Anderson,* relying upon *Lincoln Mortgage* and *Mills,* and upon *In re Clark,* 738 F.2d 869 (7th Cir.1984), held that a Chapter 13 plan proposing to cure defaults in a residential mortgage within a reasonable time and to continue making periodic payments in accordance with the original loan instruments, may be confirmed, notwithstanding the entry of a judgment of foreclosure prior to the filing of the Chapter 13 petition. Although no judicial sale had taken place in *Anderson,* it is clear to this court

that the authorities cited and the reasoning employed were equally applicable to a fact situation wherein a judicial sale had been held, but not yet confirmed, at least in a situation where, as here, the creditor was the purchaser at the foreclosure sale.

This court therefore reaffirms its decision in *Anderson* and extends the same to the fact situation here presented, where a judicial sale pursuant to a judgment of foreclosure had been held, but no order confirming such sale had been obtained prior to the filing of the Chapter 13 petition. *See In re Chambers,* 27 B.R. 687 (Bankr.S.D.Fla.1983).

It should be noted in conjunction with the foregoing that objecting creditors also urge the court to accept *Atlantic Richfield Company v. State ex rel. The Wildlife Conservation Commission,* 659 P.2d 930 (Okl.1983) as reaffirming *Payne* and *Harris, supra,* and urge the court to take notice of the fact that *Atlantic Richfield* was decided in 1983, while *Lincoln Mortgage* was decided in 1982. The date of the *Atlantic Richfield* opinion is February 8, 1983, while that of the *Lincoln Mortgage* opinion, which immediately precedes *Atlantic Richfield* in the official reporter, was November 23, 1982. It is also noted, however, that the *Lincoln Mortgage* opinion was corrected March 21, 1983, and rehearing was denied in that case on March 22, 1983, both dates being after the entry of the *Atlantic Richfield* opinion. Finally, it is this court's view that *Atlantic Richfield* does not compel the conclusion sought by objecting creditors in any event.

IV

■ Under 11 U.S.C. § 1322(b)(2), a Chapter 13 plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtors' principal residence. Under § 1322(b)(5), notwithstanding paragraph (b)(2), the plan may provide for the curing of any default within a reasonable time and the maintenance of payments. Objecting creditors do not contend, and it cannot be seriously contended, that a Chapter 13 debtor may not deaccel-

erate, if acceleration has occurred, and cure any defaults while maintaining payments under the mortgage. *See DiPierro v. Taddeo (In re Taddeo)*, 685 F.2d 24 (2nd Cir. 1982); *In re Clark, supra; Grubbs v. Houston First American Savings Association*, 730 F.2d 236 (5th Cir.1984) (en banc); *In re Anderson supra.*

As is noted above, debtors' plan herein proposes the payment to objecting creditors of the principal amount of the debt at the Chapter 13 petition date, $16,521.41, plus attorney fees, insurance prepaid by creditors, accrued interest to the date of the foreclosure judgment and court costs incurred therein, a total of $20,284.49. The plan proposes to pay this amount in full in approximately 38 months. Debtors note that the promissory note originally entered into afforded debtors the right to pay all or any part of the indebtedness at any time without penalty and therefore urge that the proposal in their plan does not modify objecting creditors' rights in violation of § 1322(b)(2). This court agrees.

The court has previously noted that objecting creditors accepted payments in excess of $8,000 between the date debtors filed their Chapter 7 petition and February 1987, allocating such payments to principal and interest as though the debt was reaffirmed, even though no such reaffirmation was ever filed. Under 11 U.S.C. § 524(a), the discharge in debtors' Chapter 7 case operated as an injunction against the commencement or continuation of any action, the employment of process or any act to collect, recover or offset any debt discharged as a personal liability of the debtor. With this in mind, objecting creditors must be assumed to have treated the post-discharge payments as voluntary payments by debtor, which is permitted by § 524(f).

Objecting creditors, in their petition in Pottawatomie County District Court seeking foreclosure of their mortgage, however, make no mention whatever of the Chapter 7 proceedings or debtors' discharge therein. In that action, objecting creditors sought, and obtained, judgment for the entire amount of the debt and, in addition, interest, costs, attorney fees and certain prepaid insurance. Having sought and obtained judgment for the entire debt,

objecting creditors, by now relying upon the previous discharge of the debt, appear to be conceding their violation of the § 524 injunction. Although it is certainly not conceded in their briefs herein, objecting creditors may have been asserting indirectly, in their Pottawatomie County action, the creation and existence of a new debt, post-discharge.

Objecting creditors herein are contending in effect that they may hold the mortgage securing the discharged debt over the head of the debtors to virtually coerce "voluntary" payments under the original obligation, and that at any time such payments become in default, they may foreclose their mortgage, the debtor having no recourse or defense, under Chapter 13 or otherwise. Such is a wholly inequitable result, and in the circumstances presented here, this court, as a court of equity, will not permit such result to obtain.

In view of the foregoing, the objection of the objecting creditors will be overruled and, there being no other objections to confirmation of the Chapter 13 plan of debtors, the same will be confirmed. A formal order of confirmation will be executed by the court upon presentation by the Chapter 13 standing trustee.