**In re Robert & Rosemarie RUSSO, Debtors.**

**No. 88 B 30963.**

United States Bankruptcy Court, N.D. Illinois, W.D.

Nov. 2, 1988.

Francis L. Keldermans, Chicago, Ill., and Joseph D. Olsen, Rockford, Ill., for petitioner.

Alice B. Shorts, Buffalo Grove, Ill., for respondent.

Mary P. Gorman, Rockford, Ill., for trustee.

### MEMORANDUM OPINION

RICHARD N. DeGUNTHER, Bankruptcy Judge.

This matter comes before the Court on the Motion of Talman Home Federal Savings and Loan Association (Talman) to Modify the Automatic Stay and the Objection of Talman to Confirmation of the Chapter 13 Plan of the Debtors, Robert and Rosemarie Russo. Attorneys Francis L. Keldermans and Joseph D. Olsen represent Talman. Attorney Alice B. Shorts represents the Debtors. Attorney Mary P. Gorman represents the Chapter 13 Trustee.

The essential question is whether the Debtors may file a Chapter 13 for the purpose of compelling a mortgagee to accept payments, rather than foreclose, in the face of the fact that the underlying debt was discharged in a Chapter 7 which was closed less than one month prior to filing the Chapter 13.

This Memorandum Opinion and Order shall represent findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

It appears that in 1987 the Debtors were behind $2,003.10 in mortgage payments owed on a second mortgage to Talman, and owed an additional $1,166.75 in late charges, foreclosure costs and attorney's fees. On October 19, 1987, the Debtors filed a Chapter 7 petition.

The Chapter 7 petition listed four secured debts: a first mortgage to Marengo Savings & Loan, Talman's second mortgage, a car loan to Beneficial Finance, and a loan to General Finance, secured by a satellite TV system.

During the pendency of the Chapter 7 case the Debtors and Talman were negotiating to reaffirm the indebtedness, but could not come to terms. Apparently Talman's policy was to reaffirm only debts which were current or could be brought current, something the Debtors could not do. The Chapter 7 discharge was entered on March 9, 1988, without the debt being reaffirmed, leaving Talman with only a lien that survived Chapter 7. The debts owed to Beneficial Finance and Avon Products,

Inc. were reaffirmed on April 5, 1988. The Chapter 7 case was closed on June 15, 1988. Talman then resumed its foreclosure suit. In response, the Debtors filed their Chapter 13 case on July 5, 1988 thereby imposing the automatic stay of Section 362 against Talman for the second time in less than eight months.

The Debtors apparently are not in default on their first mortgage, and in their Chapter 13 plan propose to make the monthly payments directly to the mortgagee. The Debtors propose to "cure the arrearages" to Talman by payments through the Chapter 13 Trustee. Based on oral statements made in Court, the Debtors do not propose to make any payments to Rose Cacioppo, the mother of Rosemarie Russo and the holder of a third mortgage, although the plan suggests to the contrary. These three debts were discharged in the Chapter 7, and not reaffirmed.

Other debts listed in the Chapter 7, and discharged, include several medical bills in excess of $5,000 and several credit card debts in excess of $5,500. The Debtors propose to make no payments on these discharged debts.

Talman asks the Court to vacate the stay, or to deny confirmation, for several reasons, including the prohibition against modification found in Section 1322(b)(2), and a lack of good faith.

The Trustee objects to confirmation on the grounds that the Debtors have no personal liability on the selected debts they propose to pay in the Chapter 13.

\*     \*     \*     \*     \*     \*

The problems inherent in multiple or serial filings have been increasingly occupying the attention of the Bankruptcy Courts. It is fair to surmise that Congress did not anticipate the problem, therefore few statutory restraints exist in the Code. A notable exception is Section 109(g), enacted in 1984, which barely scratches the surface of the problem. The phrase "Chapter 20" is now a term of art in bankruptcy law.

In its most extreme form, not applicable here, the multiple filing game involves a second case filed while the first case is pending.

The two most common motives for serial filings are:

1. To achieve a continuing reimposition of the automatic stay. *In re Gates*, 42 B.R. 4 (Bankr.N.D.Ga.1983), *In re Perez*, 43 B.R. 530 (Bankr.S.D.Tex.1984), *In re Hill*, 34 B.R. 21 (Bankr.M.D.Fla.1983).

2. To discharge, upon a nominal payment in Chapter 13, a debt which was nondischargeable in a prior Chapter 7. *In re Warren*, 89 B.R. 87, 18 B.C.D. 188 (9th Cir.1988), *Neufeld v. Freeman*, 794 F.2d 149 (4th Cir.1986).

The response to serial filings has been varied. Some courts note the absence of statutory restrictions and treat the matter as imaginative and creative lawyering. Other courts perceive it as an abuse and manipulation of the Bankruptcy Code, indicating a lack of good faith. Compare *In re Schmick*, 87 B.R. 55 (Bankr.C.D.Ill.1988), *In re Beauty*, 42 B.R. 655 (E.D.La.1984), and *In re Heywood*, 39 B.R. 910 (Bankr.N.D.N.Y.1984), with *In re Metz*, 820 F.2d 1495 (9th Cir.1987) and *In re Lewis*, 63 B.R. 90 (Bankr.E.D.Pa.1986).

Here, the Court concludes that the stay should be vacated for cause, and confirmation of the plan denied, for the following reasons:

### SECTION 1322(b)(2)

Talman Argues that compelling it to accept payments under the proposed Chapter 13 plan is a modification of its rights, contrary to Section 1322(b)(2).

The Court agrees. As a result of the Chapter 7, the Debtors have no personal liability on the note to Talman. Talman has a lien which survived the Chapter 7, and the right to proceed in rem only. *In re Weathers*, 15 B.R. 945 (Bankr.D.Kan.1981). To compel Talman to accept payments in the absence of personal liability constitutes, as a matter of law, a forbidden modification of the rights of Talman under Section 1322(b)(2).

## GOOD FAITH

The question of good faith in proposing a Chapter 13 plan must be determined under the totality of the circumstances.[1] *In re Smith*, 848 F.2d 813 (7th Cir.1988). *In re Baker*, 736 F.2d 481 (8th Cir.1984), *In re Chaffin*, 816 F.2d 1070 (5th Cir.1987), *In re Rimgale*, 669 F.2d 426 (7th Cir.1982). In other words, the Court must determine "whether or not under the circumstances of the case there has been an abuse of the provisions, purpose or spirit of [the Chapter] in the proposal." *Smith* at 818. The purpose of Chapter 13, as compared to Chapter 7 of the Bankruptcy Code, is set out in the legislative history.

> The purpose of chapter 13 is to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period.
>
> The benefit to the debtor of developing a plan of repayment under chapter 13, rather than opting for liquidation under chapter 7, is that it permits the debtor to protect his assets. In a liquidation case, the debtor must surrender his nonexempt assets for liquidation and sale by the trustee. Under chapter 13, the debtor may retain his property by agreeing to repay his creditors.... The benefit to creditors is self-evident: their losses will be significantly less THAN IF THEIR DEBTORS OPT FOR STRAIGHT BANKRUPTCY. (Emphasis added.)

H.R.Rep. No. 595, 95th Cong., 1st Sess. 118, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6079.

Here, several factors add up to a lack of good faith:

1. The automatic stay is one of the most powerful weapons known to the law. It arises not from an order of court after a hearing on the merits, but upon the mere filing of a case. It is a Congressionally imposed stay, not a judicially imposed stay. In the absence of extraordinary circumstances, its reimposition in a second case filed within one month after the closing of a prior case should not be viewed with favor by the courts.

2. Talman has not received the regular monthly payments called for in the note for almost a year. Normally, Section 1326(a) would require those regular payments to be made during the Chapter 13. Such payments were tendered by the Debtors to Talman, but the latter, with no personal liability owed to it, understandably refused them. This is but one example of the muddled rights of parties that can arise from serial filings.

3. Congress surely intended that a debtor achieve its goals by the filing of a single case. This Court considers it a misuse of the bankruptcy process to file one case, then, failing to achieve the intended goals, to refile a second case. *In re Jackson*, slp. op. (Bankr.N.D.Ill.1988).

Sections 521 and 524 permit a debtor to reaffirm a debt discharged in Chapter 7. The reaffirmation of a debt cannot be forced upon either the debtor or the creditor. A reaffirmation is a voluntary agreement.

In the Chapter 7, Talman did not agree to reaffirm. That was its right. And that is a risk the Russos, or any debtors, take when they file Chapter 7. *In re McKinstry*, 56 B.R. 191 (Bankr.D.Vt.1986), *In re Reyes*, 59 B.R. 301 (Bankr.S.D.Cal.1986).

Now, by filing a Chapter 13 and compelling Talman to accept payments on a discharged debt, the Debtors are seeking to force a reaffirmation of the debt. This is repugnant to the Code.

4. The Court has previously indicated that the Debtors' plan must be denied confirmation because it modifies the rights of Talman under Section 1322(b)(2). That factor may also be viewed as an element indicating a lack of good faith.

---

**1.** The *Smith* court observed that the good faith determination under Section 1325(a)(3) for purposes of plan confirmation would be applicable to the analysis under Section 1307(c) when determining whether the case should be dismissed.

848 F.2d at 816 n. 3. Thus, the good faith analysis here would apply to the Debtors' good faith in both proposing the plan and filing the petition.

A minority of courts holds that a debtor may file a Chapter 13 petition after receiving a discharge in Chapter 7 to prevent the secured party from foreclosing on real estate encumbered with liens that survived the Chapter 7. *In re Lagasse*, 66 B.R. 41 (Bankr.D.Conn.1986), *In re Klapp*, 80 B.R. 540 (Bankr.N.D.Okl.1987), *In re Metz*, supra. The theory of this line of cases is that a claim in bankruptcy includes not only claims against the debtor, but claims against property of the debtor under Section 102(2) of the Bankruptcy Code. The legislative history of this section indicates that it was included to cover those nonrecourse debts of the debtor which would not fit into the definition of claim because no personal liability existed. 2 Collier on Bankruptcy, Section 102.03 (15th Ed.1985).

After a Chapter 7 discharge, the personal liability of the debtor is extinguished, but the lien against the property of the debtor remains, thereby leaving what amounts to a non-recourse debt. Courts favoring this broad interpretation of "claim", rationalize that the claim can then be included in a Chapter 13 plan. This Court rejects that analysis.

The non-recourse debt analogy may be a good way to describe the effects of a Chapter 7 discharge on secured debt, but it is inapplicable to the circumstances here. The court in *In re Tarnow*, 749 F.2d 464 (7th Cir.1984) held that liens pass through bankruptcy, although claims may not and cited a long list of cases, starting with *Long v. Bullard*, 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886) in support of its holding. Although *Tarnow* involved a Chapter 11 case, it was applied to a Chapter 13 case in *In re Levine*, 45 B.R. 333 (N.D.Ill.1984). The court in *Levine* extended the *Tarnow* rationale to the confirmation provisions of Section 1327 and held that confirmation under Chapter 13 does not extinguish a lien on property. Section 1327(c) provides that upon confirmation, the debtor retains the property free and clear of any creditor's claim or interest provided under the plan. The court interpreted "claim" under this section as not including liens. *See also In re Simmons*, 765 F.2d 547 (5th Cir.1985),

*In re Honaker*, 4 B.R. 415 (Bankr.E.D. Mich.1980).

It appears that the minority view is misconstruing a mortgage lien as a claim which can be amortized under a Chapter 13 plan. For the Court to hold the Debtors not personally liable on a debt in a Chapter 7 case, and then construe a surviving lien on real estate as a personal liability of the Debtors in a Chapter 13 case filed one month later is to create a fiction that this Court is not prepared to accept.

5. Then there is the problem of fundamental fairness to the unsecured creditors whose debts were discharged in the prior Chapter 7. *See In re Edwards*, 87 B.R. 671, 17 B.C.D. 1029 (Bankr.W.D.Okla.1988), a "Chapter 19" case.

In response to abuses inherent in zero percent and nominal percent Chapter 13 plans, Congress in 1984 added the disposable income requirement of Section 1325(b)(1)(B). Debtors could no longer have zero percent or nominal percent plans confirmed if their disposable income enabled them to pay a greater percentage.

But a debtor who files a Chapter 7 followed immediately by a Chapter 13 can circumvent the disposable income requirement. In the Chapter 7 the slate is wiped clean of unsecured debts. In the subsequent Chapter 13, even if the debtor has disposable income that would have been available to pay unsecured creditors, it is not necessary to do so because there are no unsecured debts, all of them having been discharged in the prior Chapter 7.

The *Edwards* court correctly perceived this as an evasion of the policies of Chapter 13 and described it as a failure of fundamental fairness to creditors.

6. Perhaps the most unsettling and conceptually challenging aspect of the case is that there is no personal liability on the debts to be paid in the Chapter 13 plan. The Chapter 13 Trustee raises this as a ground for denying confirmation.

The Debtors propose to "cure the arrearage" to Talman. What arrearage? As a result of the Chapter 7, there is no arrearage to cure. Do we just ignore the Dis-

charge Order and create the fiction that there are debts and that there is an arrearage? The answer is no.

\* \* \* \* \* \*

Up to now the Court has dealt with the issues in a legalistic fashion; but there is a human side to the story that should not be overlooked. The Court finds that the Debtors did not enter into a premeditated scheme to file consecutive cases. They were advised to file a Chapter 7, and chose to do so because it was anticipated that a Chapter 7 was a legal remedy which would enable them to "save their home." It didn't work. It was only then that the Debtors realized they might have to make a second filing to achieve what the first filing had failed to achieve.

The Court is sympathetic to the Debtors. Although their residence, valued at $85,000, appears to be beyond their means, they are current on the first mortgage and there is sufficient value in the residence so that Talman, as a second mortgage holder, is fully secured under Section 506. One has the uneasy feeling that if the Debtors had initially opted to file Chapter 13 they could have continued their regular first mortgage payments, cured the arrearage to Talman, and paid the unsecured creditors a percentage determined by their available disposable income. But they opted for Chapter 7 and thereby permanently altered the legal rights and relationships with their creditors.

The legislative history, supra, suggests that a Chapter 13 case should be encouraged because it may produce significantly less losses for creditors than if the debtors opted for straight bankruptcy. Here, the Debtors initially opted for straight bankruptcy, and they must accept the consequences of that election.

At pretrial, the Court encouraged Talman to withdraw its Motion to Vacate Stay and Objection to Confirmation, and attempt to work the matter through with the Russos. Talman chose not to do so, which was their right.

It weighs heavily on the Court that the Debtors may lose their home. Nevertheless, in the balancing of rights between debtors and creditors, what the Debtors have attempted to do here strikes the Court as an overreaching of debtors' rights that Congress did not intend, and that the Code does not permit.

The Court, therefore, concludes that the Motion to Vacate Stay and the Objection to Confirmation should be allowed.

An Order consistent with this Memorandum Opinion is filed herewith.