In re Melvin Gerrod
**HUNDLEY, Debtor.**

**Bankruptcy No. 88–02531–RS.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

March 24, 1989.

Paul S. Bliley, Jr., Browder, Russell, Morris & Butcher, P.C., Richmond, Va., for American Home Funding.

Robert E. Hyman, Richmond, Va., trustee.

Melvin Gerrod Hundley, pro se.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes before the Court upon an objection filed by American Home Funding, Inc. ("American Home") to the Chapter 13 plan of reorganization of Melvin Gerrod Hundley ("Hundley"). Finding that Hundley has no debts and is thus ineligible for Chapter 13 relief, that Hundley's proposed treatment of holders of liens on his home would violate 11 U.S.C. § 1322(b)(5), and that filing this Chapter 13 case amounts to an abuse of process, the Court sustains American Home's objection and orders that confirmation of Hundley's plan of reorganization be denied and his case dismissed.

## FINDINGS OF FACT

According to the records of this Court, Hundley has filed bankruptcy petitions in this Court seven times within the last five years. He commenced his first Chapter 7 on November 3, 1983, which proceeding was dismissed on September 12, 1984. He filed his second Chapter 7 case on November 23, 1984, and that case was dismissed on January 21, 1985. Thereafter, on March 4, 1985, Hundley began his first Chapter 13 case. Yet again, dismissal ensued, this time on June 14, 1985.

On August 22, 1986, Hundley filed his third Chapter 7, and received a discharge on December 3, 1986. The debt due to American Home, secured by a deed of trust on real property owned by Hundley was discharged at that time. No reaffirmation agreement was entered into, either before or after his discharge, between Hundley and Investors Savings Bank ("Investors"), American Home's predecessor-in-interest. On December 30, 1986, the Court entered an order granting Investor's request for relief from stay to proceed against Hundley's real property.

Hundley filed his second Chapter 13 case on April 24, 1987. By order entered June 8, 1987, the Court dismissed this case for cause upon the motion of Investors. On September 4, 1987, Hundley commenced his third Chapter 13. On motion of Investors the Court, finding his repetitive filings to be an abuse of process, dismissed this case with prejudice and enjoined him from filing a petition in bankruptcy for a period of 180 days.

Upon the threat of foreclosure of property subject to American Home's lien, the instant Chapter 13 case was commenced by the filing of a petition on November 16, 1988. In his plan of reorganization Hundley lists no unsecured creditors, and he testified at the hearing upon American Home's objection that he had no unsecured debts. Hundley's plan reflects two secured debts, one to American Home and another to the Federal National Mortgage Association ("Fannie Mae"), both secured by liens on his principal residence.

## CONCLUSIONS OF LAW

The Court grounds its denial of confirmation and its dismissal of this case on three bases. First, the Court concludes that Hundley is not eligible for Chapter 13 relief, because he does not presently owe any debts. Second, the Court holds that Hundley's proposal to cure defaults upon obligations to his lienholders through a Chapter 13 plan of reorganization is prohibited by 11 U.S.C. § 1322(b)(5). Third, the Court finds that the filing of the instant petition constitutes an abuse of process.

### I. Hundley Has No Debts

The purpose of Chapter 13 is to enable a debtor who is qualified to file a case to pay out his creditors over a period of time. A major benefit offered to debtors by Chapter 13 is that it permits the cure of an arrearage on a real estate mortgage. *In re Brown,* 52 B.R. 6 (Bankr.S.D. Ohio 1985). But a Chapter 13 plan of reorganization can only deal with creditors, that is, entities holding claims against the debtor. *See e.g., In re Binford,* 53 B.R. 307 (Bankr.W.D.Ky.1985); *Brown, supra* at 7. "Claim" is defined at 11 U.S.C. § 101(4)(A) as a right to payment, or a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment. Unquestionably, American Home, a real estate mortgagee, possessed a claim in the Chapter 7 case in which Hundley received a discharge. In the present case, however, American Home is not a creditor within the meaning of the Bankruptcy Code. Its right to payment from Hundley disappeared when the note it held was discharged when he received his discharge in bankruptcy in his earlier Chapter 7 case. 11 U.S.C. § 727.

Presently, American Home holds only a lien against Hundley's real estate. *Associates Financial Services Corp. v. Cowen,* 29 B.R. 888, 895 (Bankr.S.D.Ohio 1983). Hundley has no personal obligation under the lien of the deed of trust held by American Home. Such a lien merely constitutes a consensual charge against an individual's property to assure satisfaction of a separate legal obligation. In this case, the sep-

arate obligation was the underlying but now discharged note. Hundley's earlier discharge in bankruptcy enjoins further collection of the underlying debt, but the lien survives the discharge and remains as a charge against his property.[1] 11 U.S.C. § 541(d); *In re Reyes*, 59 B.R. 301 (Bankr. S.D.Ca.1986).

Thus, the debts of the only two "creditors" listed by Hundley in the present Chapter 13 plan were wiped out by his earlier Chapter 7 discharge. In addition, Hundley testified at the hearing in this matter that he had no debts other than those he believed he owed to American Home and Fannie Mae. Hundley, then, has no debts to address in Chapter 13. For this reason alone the Court would deny confirmation of the plan of reorganization and dismiss this case.

The Court is aware of a line of cases holding, on facts similar to those in this case, that liens on property of the debtor qualify as "claims" within the meaning of § 101(4). *See e.g., In re Klapp*, 80 B.R. 540 (Bankr.W.D.Okla.1987); *Matter of Lagasse*, 66 B.R. 41 (Bankr.D.Ct.1986); *In re Lewis*, 63 B.R. 90 (Bankr.E.D.Pa.1986). These cases permit Chapter 13 plans to cure the arrearages arising from debts previously discharged in bankruptcy. The Court, however, disagrees with the minority view expressed by these decisions, as will be discussed *infra*.

### II. Plan Would Violate 11 U.S.C. § 1322(b)(5)

■ Assuming *arguendo* that in this case American Home does hold a "claim" within the meaning of the Bankruptcy Code, this claim would still be "secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). As a result, modification of the claim would be forbidden, except to the extent permitted under § 1322(b)(5).

It is here that the minority position breaks down. Section 1322(b)(5) permits a Chapter 13 plan to:

> provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured or secured claim *on which the last payment is due after the date on which the final payment under the plan is due.*

11 U.S.C. § 1322(b)(5) (emphasis added). In Hundley's case, however, the last payment on American Home's claim is *not* due after the date on which the final payment under the plan is due. Hundley's earlier defaults, and American Home's demand for payment on the previously discharged note, resulted in acceleration of his obligation and transformed the note into a demand instrument.[2] This, coupled with the fact that the parties did not enter into a reaffirmation agreement prior to Hundley's discharge in 1986, precludes Hundley from insisting that the payback he proposes in his Chapter 13 plan be made pursuant to the terms of the note. Hundley's obligations to his lienholders, to the extent they still exist, are immediately due and owing, and thus fall outside the § 1322(b)(5) exception. Hundley cannot modify these "claims," and cannot propose to cure any defaults which may exist.

The scenario presented in this case is clearly distinguishable from the ordinary Chapter 13 situation. In the usual case, the debtor has defaulted on his note, the creditor has made demand, and foreclosure looms. The debtor then files a Chapter 13 petition, proposing to use the provisions of the Bankruptcy Code to decelerate the note, cure the default over time, and begin to make the regular payments under the terms of his note. Even upon completion of his plan, the debtor would remain obligated under his note, since this type of long-term debt is specifically exempted from discharge. 11 U.S.C. § 1328(a)(1). The average debtor is, in effect, utilizing

---

1. The Court notes that the claim of Fannie Mae, the other creditor scheduled by Mr. Hundley in his Chapter 13 plan, was similarly discharged in Mr. Hundley's prior Chapter 7 case.

2. Of course, as a result of his prior discharge, Mr. Hundley was exonerated of any personal liability under this note.

Chapter 13 to reinstate his note, which points out the distinction between these typical circumstances and those presently before the Court. In Hundley's case, as discussed above, there is no note to reinstate. The prior discharge, coupled with the absence of reaffirmation, extinguished Hundley's obligation. The Court points out the above distinction to emphasize that the Court's holding in no way restricts the ability of ordinary Chapter 13 debtors, who have not previously received a discharge of their obligations under notes secured by deeds of trust on their principal residences, to cure defaults pursuant to § 1322(b)(5).

### III. Lack of Good Faith

■ In addition to finding that Hundley presently has no debts which may be addressed in Chapter 13, and that his proposed plan violates § 1322(b)(5), the Court also concludes that his plan of reorganization has not been filed in good faith. Of course, lack of good faith is sufficient ground upon which to either dismiss a Chapter 13 case or deny confirmation of a plan. 11 U.S.C. §§ 1307(c), 1325(a)(3). *See In re Beauty*, 42 B.R. 655 (E.D.La.1984); *In re McElveen*, 78 B.R. 1005 (Bankr.D.S. C.1987); *Matter of Mountcastle*, 68 B.R. 305 (Bankr.M.D.Fl.1986).

As a preliminary matter, the Court notes that because Congress neither defined nor explained the term "good faith," either in the Bankruptcy Code or in the legislative history, and because the term must apply to a multitude of diverse fact situations, it is not susceptible to strict definition. Generally, though, the inquiry is directed to whether the petition and the plan conform to the provisions, purpose, or spirit of Chapter 13.

In considering whether in filing his Chapter 13 case Hundley exhibited a lack of good faith sufficient to constitute "cause" for dismissal within the meaning of § 1307(c), the Court focuses on a number of factors. First, although Chapter 13 does not contain any provision which requires a showing of a specific number of unsecured creditors before a debtor may seek relief under the chapter, the absence of any such creditors is one element in determining whether an abuse of Chapter 13 exists. Additionally, the filing of a Chapter 13 petition as a litigation tactic is not consistent with an honest debtor's intention to readjust his financial affairs. The Court believes that in the instant case, where Hundley lists no creditors and seeks to address only deed of trust lienholders, he is using the provisions of Chapter 13, not to reorganize his finances, but rather to forestall these lienholders from exercising their rights.

■ In determining whether the Chapter 13 plan satisfies the good faith requirement of § 1325(a)(3), the Court considers it in the context of Hundley's previous filings. Serial filings do not in themselves constitute bad faith. *In re Robinson*, 18 B.R. 891 (Bankr.D.Ct.1982). Nevertheless, the good faith determination requires the Court to examine the proximity in time of the earlier proceedings, and to compare the debts scheduled in the Chapter 7 case in which Hundley received a discharge with those listed in his present Chapter 13 plan. *In re Sanchez*, 20 B.R. 431 (Bankr.W.D.Tx. 1982).

As noted above, Hundley has filed seven bankruptcy petitions within the past five years. Three of those petitions commenced cases under Chapter 7, and four, including the instant petition, cases under Chapter 13. Even after receiving a Chapter 7 discharge, on December 3, 1986, Hundley filed two of his Chapter 13 petitions. The first was dismissed for cause, and the second was dismissed with prejudice, the Court enjoining Hundley from refiling for 180 days based upon the Court's finding that Hundley's filing constituted an abuse of process. It is true that the instant case was commenced more than two years after the Chapter 7 case in which Hundley received a discharge, and more than a year after the penultimate Chapter 13 case which was dismissed with prejudice. The Court points out, however, that there is no evidence of a material change in Hundley's financial circumstances since the last Chapter 13 was filed. In his testimony, Hundley stated that he has no debts other than

those ostensibly owed to American Home and Fannie Mae. In truth, these debts do not exist. Given these facts, the Court concludes that Hundley did not file the latest in a string of repetitive filings in good faith even though the 180 day prohibition against filing had expired.

The Court's finding that good faith is lacking in this case is supported by the fact that Hundley is attempting to use the provisions of Chapter 13 for an improper purpose. *In re Heywood*, 39 B.R. 910 (Bankr. W.D.N.Y.1984). Under his proposed plan of reorganization, Hundley seeks to do indirectly what he cannot do directly. Specifically, Hundley, who did not, prior to his Chapter 7 discharge, enter into reaffirmation agreements with the creditors holding notes secured by liens on his home, here attempts to fashion a remedy closely akin to reaffirmation. In essence, he attempts to compel a *de facto* reaffirmation of debts which no longer exist. *See Reyes, supra* at 302; *Binford, supra* at 309. The Court finds that this attempt is impermissible and evinces bad faith on the part of Hundley.

For the reasons stated above, the Court concludes that Hundley's Chapter 13 petition and plan of reorganization were not filed in good faith. Further, his plan of reorganization cannot be confirmed because it proposes a modification not permitted by § 1322(b)(5). Finally, the Court finds that Hundley's case must be dismissed because at present he has no debts which can be addressed in bankruptcy. As a result, the Court will deny confirmation of the plan and dismiss the case.

An appropriate Order will issue.