**In re George HYDEN and Joyce Hyden, Debtors.**

**Bankruptcy No. BK–89–02876–LN.**

United States Bankruptcy Court,
W.D. Oklahoma.

Jan. 22, 1990.

See also, Bkrtcy., 112 B.R. 431.

cy Code[1] and have proposed its confirmation. The Chapter 13 Trustee ("Trustee") and Federal National Mortgage Association ("FNMA"), a holder of a secured claim against property of debtors, have objected to the confirmation of the Plan. A hearing was held, briefs were filed, and the matter is now at issue and ripe for decision.

## BACKGROUND

In 1983, debtors gave their promissory note, secured by a real estate mortgage upon property which is their principal residence, to FNMA's predecessor in interest, Pool Mortgage Company. Debtors were later named as defendants in a State court action involving allegations of fraud. In December 1987, prior to the final adjudication of the State court action, debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code, and received a discharge in January 1989. No reaffirmation of the mortgage debt was effected during the course of the Chapter 7 proceeding.

In March 1988, FNMA obtained relief from the automatic stay of § 362(a), and filed a foreclosure action upon the real estate. FNMA obtained a judgment in the foreclosure action in April 1989, but before execution could be effected on the judgment, on May 5, 1989, debtors filed their petition herein under Chapter 13 of the Bankruptcy Code. In their Plan, debtors propose to avoid the lien of FNMA upon their residence "to the extent that it is not secured by the value of the property." They also propose that no payment be made through the plan upon any arrearages, "as the arrearage claim is unsecured."

Melinda Monnet, Oklahoma City, Okl., for debtors.

Kirk J. Cejda, Oklahoma City, Okl., for Federal Nat. Mortg. Ass'n.

Lyle R. Nelson, Oklahoma City, Okl., for Chapter 13 Trustee.

## ORDER ON OBJECTIONS TO CONFIRMATION OF AMENDED CHAPTER 13 PLAN

PAUL B. LINDSEY, Bankruptcy Judge.

Debtors have filed an amended plan (the "Plan") under Chapter 13 of the Bankrupt-

## CONTENTIONS

Debtors contend that their discharge in the Chapter 7 case discharges them from *any* personal liability on the debt secured by the mortgage, leaving FNMA with an *in rem* claim only against the real property. They further contend that the *in rem* claim

---

1. 11 U.S.C. §§ 101, et seq. References hereafter to specific section numbers will be to the Bankruptcy Code, unless otherwise noted.

itself is limited to the value of the property, stated by debtors to be $65,000, and that they should be permitted to make monthly payments of principal and interest in the amount of $910.44 through the life of the Plan, 36 months, at the end of which time "the note and mortgage in favor of Federal National Mortgage Association shall be deemed reinstated."

■ FNMA first contends that the arrearages on the mortgage were not discharged in the Chapter 7 case. Although it is far from clear, it appears that FNMA concedes that debtors have no further personal liability upon any aspect of the debt secured by the real property, but believes that the arrearages may be sought by it in an action brought to enforce its remaining *in rem* interest in the property, and may be awarded in any judgment resulting from such an action. Since FNMA seems to concede that debtors have no further personal liability on the underlying debt, which debt would necessarily include any arrearages, the court will not deal with this contention further.

■ FNMA next contends that debtors must, under § 1322(b)(5) [2], provide for the curing of defaults within a reasonable time, while maintaining regular payments. In this contention, FNMA appears to concede that, under this court's holding in *In re Ross*, 107 B.R. 759 (Bankr.W.D.Okla.1989), debtors may, whether or not § 1322(b)(2) [3]

2. Which provides that a Chapter 13 plan may "notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due."

3. Which provides that a Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."

4. See also *Jim Walter Homes, Inc. v. Saylor (In re Saylors)*, 869 F.2d 1434 (11th Cir.1989); *Downey Sav. & Loan Ass'n v. Metz (In re Metz)*, 820 F.2d 1495, 1498 (9th Cir.1987); *In re Smith*, 94 B.R. 216 (Bankr.M.D.Ga.1988); and *In re Hag-*

is applicable, employ § 506(a) to determine the amount of FNMA's allowed secured claim, thus bifurcating its claim into secured and unsecured components.

Finally, FNMA contends that debtors' case should be dismissed, relying primarily upon *In re Smith*, 94 B.R. 216 (Bankr.M.D. Ga.1988), and *In re Brown*, 52 B.R. 6 (Bankr.S.D.Ohio 1985).

The Trustee has filed a brief stating agreement with debtors' contention that they have no further personal liability upon any part of the debt underlying the real property, arrearages or otherwise. The Trustee goes further, however, and contends that the Plan should be denied confirmation as not having been proposed in good faith.

## DISCUSSION

In *In re Klapp*, 80 B.R. 540 (Bankr.W.D. Okla.1987), this court held that a mortgage securing a debt previously discharged in Chapter 7 proceedings and thus constituting a nonrecourse obligation, may be scheduled and treated in a Chapter 13 plan. In so holding, this court followed what appeared to be the minority view, represented by *Matter of Lagasse*, 66 B.R. 41 (Bankr.D. Conn.1986), and *In re Lewis*, 63 B.R. 90 (Bankr.E.D.Pa.1986), and declined to follow *In re McKinstry*, 56 B.R. 191 (Bankr.D.Vt. 1986), and *In re Binford*, 53 B.R. 307 (Bankr.W.E.Ky.1985).[4]

*berg*, 92 B.R. 809 (Bankr.W.D.Wis.1988) [minority view]; and *In re Hundley*, 99 B.R. 306 (Bankr.E.D.Va.1989); *In re Johnson*, 96 B.R. 326 (D.Kan.1989); and *In re Russo*, 94 B.R. 127 (Bankr.N.D.Ill.1988) [majority view]. Although rejecting the view adopted in *Klapp* and the other minority view cases, the court in *Russo, supra*, closes its opinion with the following:

The Court is sympathetic to the Debtors. Although their residence, valued at $85,000, appears to be beyond their means, they are current on the first mortgage and there is sufficient value in the residence so that Talman, as a second mortgage holder, is fully secured under Section 506. One has the uneasy feeling that if the Debtors had initially opted to file Chapter 13 they could have continued their regular first mortgage payments, cured the arrearage to Talman, and paid the unsecured creditors a percentage determined by their available disposable income. But they opted for Chapter 7 and thereby perma-

In *Klapp, supra,* the note and mortgage in question was scheduled and the secured property was claimed as exempt homestead property in the Chapter 7 case, and debtors were granted a discharge. Throughout the pendency of the Chapter 7 case and for a considerable period thereafter, debtors nevertheless continued to make monthly debt service payments to the creditors holding the note and mortgage. Such payments were accepted and applied to principal and interest, in the total amount of more than $8,000. After debtors ceased making payments, the mortgage was foreclosed by the creditors in State court, and debtors filed their Chapter 13 petition before the foreclosure sale was confirmed. Debtors proposed a plan under which the entire remaining principal amount of the note, attorney fees awarded in the foreclosure action, insurance prepaid by the creditors, accrued interest as of the date of the foreclosure judgment, and court costs incurred in the foreclosure action, would be paid in full in 38 months. Over the objection of the holders of the mortgage, the plan was confirmed.

In *In re Ross, supra,* 107 B.R. 759, this court held that the provisions of § 1322(b)(2), which prohibits modification of the rights of the holder of a claim secured only by a security interest in real property that is the debtor's principal residence, did not prevent the bifurcation of such a claim under § 506(a), and that in fact such was necessary in order to determine the extent of the secured claim to be protected by § 1322(b)(2). In that case, which did not involve a previous Chapter 7 discharge, debtors proposed to make regular monthly payments on the first mortgage, which it conceded was fully secured, and to cure, in forty-eight equal installments, arrearages on that mortgage aggregating over $6,000. Debtors also proposed to pay that portion of the second mortgage alleged to be secured after bifurcation under § 506(a), with interest, in forty-eight

equal installments. The unsecured portion of the second mortgage would receive, with other unsecured creditors, approximately four percent (4%) of its value under the plan. The court held that the rights of the holder of the second mortgage could not be modified with respect to the secured portion of its claim, and that therefore the payment amount and all other provisions of the governing documents must remain unchanged. The principal amount, considerably reduced by bifurcation, would of course be repaid more quickly than was originally contemplated.

In *In re Edwards,* 87 B.R. 671 (Bankr.W.D.Okla.1988), this court addressed the propriety of various aspects of so-called Chapter 19 and Chapter 20 cases (where debtors discharge their unsecured debts in a Chapter 7 case, then file a Chapter 12 or 13 case). In the context of the Chapter 19 case before it, this court made the following statement:

> While the court has rejected Equitable's suggestion of a *per se* bad faith rule in "Chapter 19" cases, it has concluded that the filing of a Chapter 12 petition by a debtor or debtors soon after the granting of a discharge in a Chapter 7 petition should constitute *prima facie* evidence of bad faith, requiring debtor or debtors to come forward with an affirmative showing of their good faith, including but not limited to factual justification for the multiple filings, the lack of significant disadvantage to any creditor or creditors beyond that which would have occurred in the absence of the successive filings, materially changed circumstances and the like. *Id.* at 675.

In discussing what it described as "the problem of fundamental fairness to the unsecured creditors whose debts were discharged in the prior Chapter 7," the court in *Russo, supra,* cited *Edwards* and noted the 1984 amendment to Chapter 13 which required the application of debtors' disposa-

---

nently altered the legal rights and relationships with their creditors.

The legislative history, supra, suggests that a Chapter 13 case should be encouraged because it may produce significantly less losses

for creditors than if the debtors opted for straight bankruptcy. Here, the Debtors initially opted for straight bankruptcy, and they must accept the consequences of that election. *Russo,* 94 B.R. at 131.

ble income to the claims of unsecured creditors. The court then stated:

> But a *debtor who files a Chapter 7 fol-lowed immediately by a Chapter 13 can circumvent the disposable income requirement.* In the Chapter 7 the slate is wiped clean of unsecured debts. In the subsequent Chapter 13, even if the debtor has disposable income that would have been available to pay unsecured creditors, it is not necessary to do so because there are no unsecured debts, all of them having been discharged in the prior Chapter 7. *Russo, supra,* 94 B.R. at 130.

## CONCLUSION

The principal rationale supporting the position taken by this court in *Klapp, supra,* permitting a mortgage to be scheduled and treated in the Chapter 13 plan even though the underlying debt had been discharged in an earlier Chapter 7 proceeding, is that it permits debtors to save their home while still guaranteeing the creditor that it will receive any arrearages within a reasonable time and that the regular payments provided for in the governing instruments will be maintained.

Even when the claim is bifurcated under § 506(a), as in *Ross, supra,* the provisions of § 1322(b)(5) protect the creditor at least to the extent that they require that the default, i.e., the arrearages, be cured in a reasonable time and that regular payments

be maintained, albeit for a shorter period of time.

■ In the absence of bad faith, debtors should not be penalized for having first invoked the protections of the Bankruptcy Code under Chapter 7, only to find, after discharge, that it did not afford the desired relief, which could perhaps have been obtained under Chapter 13.[5]

■ In this case, no payments have been made by debtors since March 1986.[6] The arrearages on their mortgage note appear to have aggregated more than $20,000 at the time the Chapter 7 case was filed, and the aggregate of payments not made to date is in excess of twice that amount.[7] Nevertheless, debtors propose to reinstate the mortgage debt, after § 506(a) bifurcation, in the amount of $65,000, which is significantly below the previous mortgage balance, to make monthly payments under the plan for 36 months in the amount of $910.44, of which $769.44 would be applied to interest and principal and the balance to an escrow deposit fund, and to continue the payments for approximately five years after the conclusion of the plan until the reinstated mortgage is paid in full. All of this is without regard to the substantial arrearages, without regard to the principal amount of the debt discharged in the earlier Chapter 7 case, and without regard to the fact that debtors have occupied the property without cost for almost four years.[8]

---

**5.** See comment of the court in *Russo, supra,* quoted in note 2, above.

**6.** Debtor testified that a later attempt was made on two occasions to make $2,000 payments. She further testified that regular payments could not be made because her husband was injured and off work for approximately three months on one occasion, and that the note and mortgage changed hands so often that she did not know where to send the payments. Having had the opportunity to observe the demeanor of the witness, considering her obvious interest in the outcome, and in the absence of any corroborative evidence whatever, the court finds the testimony to be incredible. Even if true, however, this court does not believe the facts asserted constitute reasonable cause for permitting more than three years to pass without making any payment whatever.

**7.** Debtors' monthly payment, including escrow deposits, was approximately $908 per month. Although it appears that an accommodation may have been reached for a temporary reduction of the payment, there is no evidence in the record to substantiate such an agreement, or to establish that it was complied with.

**8.** The brief filed herein by counsel for debtors was of virtually no assistance to the court. It was an overly long, stream-of-consciousness narrative, made up of incomplete, incomprehensible sentences, largely irrelevant comments best characterized as snide, and a wholly unwarranted personal attack upon counsel for the Trustee. Attached to the brief are copies of numerous documents, none of which was offered or admitted at the hearing in this matter, and which therefore may not be considered as evidence herein.

In effect, therefore, debtors want to have their cake and eat it, too. In the circumstances here presented, the result sought would be wholly inequitable, in addition to being violative of the spirit, if not the letter, of Chapter 13.

Debtors may take full advantage of the discharge of any and all personal liability under the mortgage note. They may also take advantage of § 506(a) and bifurcate FNMA's claim, even though the claim is a nonrecourse claim against property of debtors, and not against debtors themselves. *See Klapp, supra.* They may employ § 1322(b)(5) to modify the rights of the holder of the secured claim, however, only if they "provide for the curing of any default within a reasonable time" and maintain regular payments. Debtors herein have done neither. Debtors' contention, that there are no arrearages to be cured by reason of the Chapter 7 discharge, could have been made in any of the cases cited above where a Chapter 7 discharge preceded the Chapter 13 filing. Had the debtors in those cases, however, attempted to avoid responsibility for the arrearages, it is highly unlikely that the court would have confirmed their Chapter 13 plan, or that it could have done so in the face of § 1322(b)(5). This court certainly would not have done so in *Klapp, supra.*

In summary, debtors herein may propose a confirmable plan only if the same complies with § 1322(b)(5). In effect, the mortgage note may be "deaccelerated," and "reinstated," but only if the plan provides for curing of the default in a reasonable time and maintenance of regular payments. Inasmuch as no payments have been made for almost four years, the plan must provide for the payment in a reasonable time of the entire amount of the unpaid payments to date, which constitute the "default," and for the maintenance of regular payments. Debtors may request a hearing under § 506(a) to determine the amount of the secured claim to be treated in the plan, but the interest rate, payment amount and other particulars of the underlying documents must remain unmodified.

The court has not been called upon to determine whether FNMA's costs and attorney fees in prosecuting the foreclosure action should be held to constitute a part of the arrearages which must be cured, and therefore it makes no such determination.

If debtors can propose a confirmable Chapter 13 plan under the foregoing guidelines, the court may not be required to determine whether such plan was proposed in good faith. It is clear that the Plan proposed by them at this time raises substantial questions as to debtors' good faith. In the circumstances, the court will defer decision on the good faith issue at this time.

Based upon the foregoing, confirmation of debtors' Plan will be denied, without prejudice to the same being modified as provided herein. In the absence of such a modification within twenty (20) days of the date hereof, this case will be dismissed.

IT IS SO ORDERED.