**In re Wallace Henry EDWARDS, a/k/a, d/b/a Wallace Edwards, Wally Edwards and Polly Marie Edwards, a/k/a, d/b/a Polly Marie Black Edwards, Polly M. Edwards, Debtors.**

**Bankruptcy No. BK–87–6988–B.**

United States Bankruptcy Court,
W.D. Oklahoma.

June 10, 1988.

Gary A. Bryant, J. Eric Ivester, of Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, Okl., for Equitable Life Assur. Ass'n.

Kenneth L. Spears, of Kenneth L. Spears, P.C., Oklahoma City, Okl., for debtor.

### ORDER ON MOTION TO DISMISS PENDING CHAPTER 12 CASE

PAUL B. LINDSEY, Bankruptcy Judge.

The Equitable Life Assurance Society of the United States ("Equitable") a creditor of debtors herein, has filed its motion seeking dismissal of this Chapter 12 case, asserting that the filing of the petition was in bad faith.

In June 1987, debtors filed a voluntary petition in this court under Chapter 7 of the Bankruptcy Code, case number 87–04127–A. Debtors' schedules filed in that case reflect $59,500 in priority claims, $3,167,096 in claims of creditors holding security and $1,332,220.65 in unsecured claims without priority, for a total of $4,558,816.65. Of the claims of creditors holding security, the schedules reflected a $674,096 claim of Equitable.

On July 20, 1987, upon the motion of Equitable, Judge Richard L. Bohanon of this court, to whom the Chapter 7 proceeding was assigned, entered his order directing the abandonment of certain real property comprising debtors' 880–acre farm in Kay County, Oklahoma and lifting the automatic stay imposed pursuant to 11 U.S.C. § 362 in order to permit Equitable to proceed with foreclosure and sale of such property. Subsequently, on September 22, 1987, debtors were granted their discharge in the Chapter 7 case. A final decree closing. the case was filed March 4, 1988.

On September 25, 1987, three days after receiving their discharge in the Chapter 7 case, debtors filed their petition herein. Attached to the Chapter 12 petition were schedules showing $49,500 in priority claims and $951,096 in claims of creditors holding security, and asserting that there were no creditors having unsecured claims against debtors. Debtors' unsecured debts, of course, had been discharged in the Chapter 7 case.

In its motion to dismiss, Equitable characterizes the filing of a Chapter 12 petition immediately after obtaining a discharge in Chapter 7 as a "Chapter 19 scheme." See *Lahman, Bankruptcy: Chapter 7 Plus Chapter 12 Equals Chapter 19*, 58 OBAJ 2138 (July 25, 1987). Equitable contends that a "Chapter 19 scheme" is evidence of bad faith *per se*, mandating the dismissal of the petition. In support of this contention, Equitable asserts that debtors, having discharged all of their unsecured debt in the Chapter 7 case, relieved themselves of any obligation to devote disposable income to any creditor, thus effectively removing the assertedly salutary provisions of 11 U.S.C. § 1225(b) from the Bankruptcy Code.

In response to the determination by several bankruptcy courts that the absence of any, or any significant, provision for payments to unsecured creditors constituted bad faith precluding the confirmation of plans filed in Chapter 13 cases, the Congress, as a part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, added subsection (b) to 11 U.S.C. § 1325. The addition made it clear that a plan could be confirmed over the objection of an unsecured creditor if the value of the property to be distributed under the plan on account of the claim is not less than the amount of the claim or that all of the debtors' projected disposable income to be received in the three-year period beginning on the date of the first payment under the plan will be applied to make payments under the plan. Thus, after the amendment, confirmation of a plan could not be denied because of the lack, or paucity, of projected payments to unsecured creditors, if the provisions of § 1325(b) were met.

When Chapter 12 was enacted in the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, it included, as 11 U.S.C. § 1225(b), a provision substantially identical to § 1325(b). Equitable contends that the granting of judicial approbation to "Chapter 19 schemes" would eviscerate the protections afforded to unsecured creditors by the Congress in § 1225(b), and in so doing would effectively defeat the legislative intent in the enactment of that provision.

As an alternative, albeit related, basis for its motion to dismiss, Equitable asserts that the "Chapter 19 scheme" constitutes an inappropriate use of the Bankruptcy Code, evidencing debtors' bad faith. In addition to debtors' having "done away with" all of their unsecured creditors through the discharge in the Chapter 7 proceeding, Equitable asserts that, by reason of debtors' participation in the abandonment, in the Chapter 7 proceeding, of the property securing Equitable's claim, Equitable was "baited" into continuing its efforts to foreclose in state court. Equitable asserts that debtors knew full well that they intended to again invoke the automatic stay by the filing of the Chapter 12 petition after having received a discharge in Chapter 7, and that this is additional evidence of debtors' bad faith, justifying dismissal of their petition.

Finally, Equitable asserts that dismissal is appropriate because, but for the interpositioning of the Chapter 7 proceeding and the discharge granted therein, debtors would have been ineligible for Chapter 12 relief on at least two grounds: First, that their debts far exceeded the $1,500,000 eligibility limit for Chapter 12 debtors; and second, that far less than the required eighty percent of their aggregate noncontingent, liquidated debts, arose out of a farming operation. Equitable thus contends that debtors are not persons who were intended to be afforded relief under Chapter 12 and that their "attempted manipulation" of the bankruptcy process is in bad faith, requiring dismissal.

Not surprisingly, debtors object to the dismissal of their Chapter 12 petition, assert that the "Chapter 19" scenario does not constitute *per se* evidence of bad faith, and offer to demonstrate, to the contrary, that they have acted in good faith.

Chapter 12 has been in effect for less than 19 months. Thus, although the court is confident that this issue has arisen in other bankruptcy courts, no published opinions on the issue have been found. The issue of good faith, however, has been litigated in numerous cases in the context of "Chapter 20" proceedings: A Chapter 7 case followed by a petition under Chapter 13. Since Chapter 12 was modeled after, and is substantially identical in many respects, to Chapter 13, decisions under Chapter 13 may be looked to in order to predict the attitudes of courts to related issues which may arise under Chapter 12.

Although the cases are by no means unanimous, and although each may, to some extent, turn on its own distinctive fact situation, the clear majority of the courts which have addressed the issue have found that the filing of a Chapter 13 petition immediately, or relatively soon after the receipt of a discharge in Chapter 7 does not, standing alone, constitute bad faith

justifying dismissal of the Chapter 13 petition. *See, e.g., In re Metz,* 820 F.2d 1495 (9th Cir.1987); *In re Baker,* 736 F.2d 481 (8th Cir.1984). In *Metz, supra* (hereafter, "Metz II"), the Court of Appeals affirmed the decision of its Bankruptcy Appellate Panel on, *inter alia,* the bad faith issue. *See In re Metz,* 67 B.R. 462 (9th Cir. BAP 1986) (hereafter, "Metz I"). The decision in *Metz I* and *Metz II* on this issue was based in large measure upon the 9th Circuit requirement that the good faith of a Chapter 13 plan proponent must be determined on a case-by-case basis, with the court reviewing the "totality of the circumstances." *Goeb v. Heid (In re Goeb),* 675 F.2d 1386 (9th Cir.1982). It is pointed out that most circuits which have addressed the issue have adopted a flexible test such as that set out in *Goeb. In re Hines,* 723 F.2d 333 (3rd Cir.1983); *Deans v. O'Donnell (In re Deans),* 692 F.2d 968 (4th Cir. 1982); *Public Finance Corp. v. Freeman (In re Freeman),* 712 F.2d 219 (5th Cir. 1983); *Ravenot v. Rimgale (In re Rimgale),* 669 F.2d 426 (7th Cir.1982); *United States v. Estus (In re Estus),* 695 F.2d 311 (8th Cir.1982); *Flygare v. Boulden (In re Flygare),* 709 F.2d 1344 (10th Cir.1983); *Kitchens v. Georgia Railroad Bank and Trust Co. (In re Kitchens),* 702 F.2d 885 (11th Cir.1983); *Barnes v. Whelan,* 689 F.2d 193 (D.C.Cir.1982). Although the Bankruptcy Appellate Panel in *Metz I* cites *Memphis Bank & Trust Co. v. Whitman (In re Whitman),* 692 F.2d 427 (6th Cir. 1982), as less than completely supportive of the flexible review test of good faith, this court's reading of that case is that it is not inconsistent with such a rule. Although the court in *Whitman* expresses grave concerns with regard to manipulation of the Bankruptcy Code by a dishonest debtor, it nevertheless requires a review of all relevant facts and circumstances before determining whether to confirm or deny a Chapter 13 plan.

In *Metz I,* the Bankruptcy Appellate Panel concedes that "obvious policy concerns arise as to the Chapter 13 case that is part of a Chapter 20." Among these concerns are the eradication of unsecured debts in the Chapter 7, thus permitting a Chapter 13 plan which pays nothing to those creditors who very shortly before possessed unsecured claims against the debtor. The substance of the panel's stated concern seems to be that the Chapter 20 scenario would undermine the incentive built into Chapter 13 for debtors to pay their unsecured debts, such incentives being, generally, the more favorable treatment available to Chapter 13 debtors than to those under Chapter 7. It is stated that "Chapter 20", by circumventing the need to pay unsecured debts, "pose[s] a direct threat to the rationale for having Chapter 13." The panel concludes, in refusing to adopt a rule of bad faith *per se* in "Chapter 20" cases, as follows:

> "While Chapter 20 cases are clearly undesirable, [the creditor's] approach to Chapter 20's runs contrary to the totality-of-the-circumstances test of *Goeb.*"

The panel goes on to note that the Bankruptcy Judge applied the proper test, inquired into the totality of the circumstances and ruled that the multiple filings were justified by a change of circumstances in the form of an earnings increase which for the first time permitted the proposal of an acceptable payment schedule and interest rate on certain home loan arrearages. It was also determined that the debtor had shown good faith by keeping his house payment current during the pendency of his Chapter 13 cases and that the only circumstance negating good faith was the filing of three bankruptcy cases within a six month period. Finding such multiple filings justified in the circumstances, the bankruptcy court made an affirmative determination that debtor had acted in good faith, and the Bankruptcy Appellate Panel affirmed. The Court of Appeals, in *Metz II,* made short work of the creditor's contention that the multiple filings constituted bad faith *per se,* citing *In re Baker, supra; In re Gayton,* 61 B.R. 612 (9th Cir. BAP 1986); *In re Beauty,* 42 B.R. 655 (E.D.La. 1984), *appeal dismissed,* 745 F.2d 53 (5th Cir.1984). The court nevertheless determined that the successive filings could be examined together and the results achieved by them reviewed against the statutory

requirements. *See Neufeld v. Freeman*, 794 F.2d 149 (4th Cir.1986). The court then applied the "totality of the circumstances" test of *Goeb, supra*, reiterated the findings of the bankruptcy judge and of the Bankruptcy Appellate Panel and noted that: "such a bonafide change in circumstances is precisely what the bankruptcy judge should examine to determine whether successive filings are proper." The court then cites the Tenth Circuit case of *Flygare v. Boulden, supra*, as authority for its determination that the absence of any payment to unsecured creditors is not sufficient, at least standing alone, to support a determination that the plan was submitted in bad faith. The bankruptcy judge's confirmation of debtor's Chapter 13 plan was upheld.

The similarity between Chapter 13 and Chapter 12 justifies consideration of the reasoning and decisions in the "Chapter 20" cases in the context of "Chapter 19" proceedings, such as that present here. In fact, debtor and Equitable both recognize the analogy and both rely upon the "Chapter 20" decisions, particularly *Metz I* and *II*. Equitable, although initially contending that the filing of a Chapter 12 proceeding immediately following the entry of a discharge in a Chapter 7 case should be treated as *per se* bad faith, alternatively relies upon the language in *Metz I* referred to above, pointing to negative policy implications which would flow from wholesale allowance of "Chapter 19" or "Chapter 20" proceedings. Equitable also points out that, unlike the circumstance in *Metz*, debtors herein have made no affirmative showing of good faith. Debtors contend that nothing in the Bankruptcy Code prevents a "Chapter 19"; that on the date of the filing of their Chapter 12 petition, they met the eligibility criteria for Chapter 12, found in 11 U.S.C. § 101(17)(A); that *Metz* and other "Chapter 20" decisions had been rendered and published prior to the enactment by the Congress of the Bankruptcy Judges, United States Trustees and Family Farmers Bankruptcy Act of 1986 and that had Congress wished to prohibit the practice, it could easily have done so at that time; and that they are willing to amend their Chapter 12 plan to reflect that all property and disposable income will be submitted to the control of the trustee and that each creditor will retain its lien.

Applying the reasoning of the cases cited above, this court is of the view that the adoption of a *per se* bad faith rule in the context of a "Chapter 19" proceeding would be inappropriate. In fact, just as the appellate bodies in *Metz* found that such a rule would conflict with Ninth Circuit precedent in *Goeb*, this court is of the view that the adoption of such a rule here would conflict with the Tenth Circuit rule announced in *Flygare*. Thus, it is this court's view that it must examine the totality of the circumstances surrounding the filing of the successive petitions constituting the "Chapter 19", together with the effects thereof, in order to determine whether debtors have acted in good faith. If they have not, the motion to dismiss should be granted.

■■■ While the court has rejected Equitable's suggestion of a *per se* bad faith rule in "Chapter 19" cases, it has concluded that the filing of a Chapter 12 petition by a debtor or debtors soon after the granting of a discharge in a Chapter 7 petition should constitute *prima facie* evidence of bad faith, requiring debtor or debtors to come forward with an affirmative showing of their good faith, including but not limited to factual justification for the multiple filings, the lack of significant disadvantage to any creditor or creditors beyond that which would have occurred in the absence of the successive filings, materially changed circumstances and the like.

Although debtors herein have promised, in their brief, to "demonstrate that their Chapter 19 Proceeding has been filed in good faith," no such demonstration has been forthcoming. The justification for the multiple filings has simply been that the law does not prohibit them and that the Congress could have enacted such a prohibition when Chapter 12 was adopted, but failed to do so. This does not answer the argument of Equitable that "Chapter 19" is manipulative of the provisions of the Code

and has results which are in derogation of the policies, purposes and aims thereof.

Here, it is undisputed that in June 1987, debtors had total indebtedness of more than $4,500,000 and that three months later, by virtue of their discharge in the Chapter 7 case, their indebtedness totaled slightly more than $1 Million, none of which constituted unsecured debt. It is also undisputed that the Chapter 7 petition was filed for the sole purpose of reducing debtors' aggregate indebtedness below the upper limits for Chapter 12. Equitable asserts, and debtors do not deny, that far less than eighty percent of their indebtedness as of June 1987 arose out of their farming operation. Instead, the same apparently arose out of numerous business and family transactions not directly related to the farming operation.

Clearly, therefore, in June 1987, debtors did not meet the definition of "family farmer" in 11 U.S.C. § 101(17)(A), which limits aggregate debts to $1,500,000 and requires that not less than eighty percent of the aggregate noncontingent, liquidated debts arise out of their farming operation. Three months later, by virtue of the discharge in the Chapter 7 case, debtors met both of these requirements and, presumably, the gross income requirement contained in the same provision as well. Debtors had not changed, nor, presumably, had their operation. Only the aggregate amount and composition of their debts had changed, and only by virtue of the Chapter 7 discharge.

The effect of the multiple filings in this case, if the Chapter 12 case is not dismissed and a plan is ultimately confirmed, would be as follows: A couple who, based upon eligibility criteria enacted by Congress, bear virtually no resemblance to the "family farmer" sought to be aided by the provisions of Chapter 12, would be rendered eligible for relief under that Chapter by employing the provisions of Chapter 7 to "shed" over $3.5 Million in debt, including all of their more than $1 Million in unsecured debt. Persons who had been unsecured creditors and would have been entitled, under a Chapter 12 plan, to payments at least in an amount equal to any disposable income possessed by debtors over a three-year period, would receive nothing, their debts having been discharged.

In this court's opinion, such a result cannot be countenanced simply because the Congress did not contemplate, specifically address or prohibit the combination of procedures leading to that result. There may well be situations and sets of circumstances which would justify the multiple filings comprising, as here, a "Chapter 19" proceeding. No such circumstances are present here, however, and debtors have made no affirmative showing of good faith to counter the idicia of bad faith asserted by Equitable and recited herein.

Based upon the foregoing, although the court declines to adopt a *per se* bad faith rule in "Chapter 19" cases, it has examined the totality of the circumstances surrounding the multiple filings comprising the "Chapter 19" proceeding in this case and has found and determined that debtors have not overcome the *prima facie* bad faith showing evidenced by the premeditated multiple filings, or affirmatively established that they acted in good faith. Such being the case, the Motion to Dismiss Pending Chapter 12 Case filed herein by the Equitable Life Assurance Society of the United States will be granted and this case will be dismissed.