**In re E. Reynolds WICKLIFFE, Debtor.**

**Bankruptcy No. 4–88–00800.**

United States Bankruptcy Court,
W.D. Kentucky.

April 3, 1989.

Steven S. Crone and Ronald J. Bamburger, Owensboro, Ky., for debtor.

John W. Ames, Louisville, Ky., trustee.

John S. Osborn, Jr. and Joan Lloyd Cooper, Louisville, Ky., for Aetna Life Ins. Co.

Joseph J. Golden, Louisville, Ky., Asst. U.S. Trustee.

## MEMORANDUM OPINION

J. WENDELL ROBERTS, Chief Judge.

This case is before the court upon motion of the secured creditor, Aetna Life Insurance Company (hereinafter, "Aetna") to dismiss the debtor's chapter 12 petition for lack of good faith. Exhaustive memoranda in support of and in opposition to the motion have been filed by Aetna and the debtor, respectively. We have reviewed these memoranda, the evidence of record and the authorities cited relative to the parties' positions and conclude that Aetna's motion must presently be overruled.

The salient facts which gave rise to the instant motion developed over a number of years and document a stormy relationship between the debtor and Aetna. Those facts can fairly be summarized as follows. On February 11, 1983 Aetna loaned the debtor the sum of $1,200,000.00, evidenced by a promissory note in that amount which bears only the signature of the debtor. As security for this debt, a mortgage encumbering eight farms located in Muhlenberg County, Kentucky, was granted to and recorded by Aetna by all owners thereof. The debtor was the sole owner of four of the encumbered farms. Of the remaining four, three were owned in their entirety by the debtor's mother, Christine O. Wickliffe. The last farm was property of the estate of J.E. Wickliffe, deceased, an estate which consisted of the debtor, his brother, W.A. Wickliffe, and their mother, Christine. Christine Wickliffe died intestate in June 1985, leaving the debtor and W.A. Wickliffe as the owners of undivided one half interests in the latter four farms. Thus from June 1985 until the time the instant case was commenced, the debtor owned all of four of the farms and an undivided one-half interest in the remaining four farms, each of which was subject to Aetna's mortgage. On November 25, 1988, fifteen days following the debtor's petition for chapter 12 relief, W.A. Wickliffe and his wife, Joetta Wickliffe, conveyed their interests in the latter four farms to the debtor by quit claim deed.

The debtor defaulted on the Aetna loan in July, 1985. Pursuant to the terms of its mortgage, Aetna accelerated the balance due on its note and on November 21, 1985, it filed suit in Muhlenberg Circuit Court, seeking to enforce its lien. After his attempts to negotiate a settlement of Aetna's claim proved unsuccessful, the debtor filed for relief under chapter 11 of the Bankruptcy Code on June 10, 1986, thereby invoking the automatic stay provisions of 11 U.S.C. § 362. On April 25, 1988, the court dismissed the case because the debtor's proposed plan of reorganization failed to satisfy the "cramdown" requirements of 11 U.S.C. § 1129(b)(1). One week later, Aetna renewed its earlier motion for summary judgment in the Muhlenberg Circuit Court action and received a hearing date of May 16, 1988. However on May 11, 1988, the debtor filed a petition for relief under chapter 7, again staying Aetna's foreclosure proceedings.

Aetna thereafter made a motion for relief from the automatic stay and by order entered July 17, 1988, this court sustained the motion. Summary judgment was subsequently granted by the Muhlenberg Circuit Court on August 9, 1988, with the debt then adjudged to have totalled $1,795,131.00 plus accruing interest. On August 24, 1988, we entered an order allowing the debtor to proceed under 11 U.S.C. §§ 506(a) and (d) to avoid Aetna's lien to the extent it exceeded the value of its collateral. By order entered September 14, 1988, following notice and hearing, the value of the eight farms was found to total $813,100.00, with the debtor's interest therein adjudged to be $609,225.00. A discharge of all the debtor's unsecured debt, including the unsecured portion of the debt owed Aetna, was entered by this court on November 1, 1988.

Having previously obtained relief from the automatic stay in the chapter 7 case, Aetna had continued to pursue its state court foreclosure action to the point that the Muhlenberg Circuit Court had scheduled the property to be sold at the courthouse door on November 14, 1988. However the sale did not take place because the debtor filed a third bankruptcy petition,

this time under chapter 12, on November 10, 1988, only four days before the scheduled sale. On November 18, 1988, the Muhlenberg Circuit Court ordered Aetna to pay the expenses of the aborted sale, which amounted to $4702.50.

■ Aetna now asserts that the debtor's course of conduct in filing successive bankruptcy petitions, which closely mirror its state court foreclosure efforts, amounts to bad faith *per se*, warranting dismissal of the case under the provisions of 11 U.S.C. § 1208(c). That section of the bankruptcy code allows dismissal,

"... for cause, including—

(1) unreasonable delay, or gross mismanagement, by the debtor that is prejudicial to creditors ... [or]

(9) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation."

In support of its motion, Aetna cites several theories which we will address, seriatim. Aetna's first argument relates to the $1,500,000.00 debt ceiling on chapter 12 filings, found at 11 U.S.C. §§ 101(17) and 109(f). Because the debtor would not have otherwise fallen within the debt limit for chapter 12 had he not first discharged all unsecured debt in chapter 7, Aetna avers, he has "bootstrapped" his way into chapter 12, a result which appears to contravene Congressional intent in its enactment of the current chapter 12 debt ceiling provisions. This result, Aetna urges, disqualifies the debtor from seeking chapter 12 relief since he could not, but for his earlier chapter 7 discharge, be a chapter 12 debtor. We agree that the current scenario represents a somewhat anomalous outcome of the chapter 7 filing. However, the debtor appears to have met the letter, if not the spirit, of the law as regards his initial eligibility to be a chapter 12 debtor. In our view, use of the bankruptcy code in such a fashion is a practice that impacts most heavily on the issue of whether the debtor's subsequent chapter 12 petition was filed in good faith. Accordingly, while we decline to dismiss the instant case on the ground that the debtor does not qualify to be a chapter 12 debtor, we believe that the

debtor's use of chapter 7 to achieve the result found here is a factor we must consider in assessing his good faith as required by 11 U.S.C. § 1225(a)(3).

■ Good faith is a rather amorphous concept which is nonetheless tightly woven in the fabric of cases filed under chapters 11, 12 and 13. No plan of reorganization may be confirmed under any of those chapters unless the court finds it to be, "... proposed in good faith and not by any means forbidden by law." 11 U.S.C. §§ 1129(a)(3), 1225(a)(3) and 1325(a)(3). A bankruptcy court's determination of the bona fides of a plan of reorganization is a finding of fact. Accordingly the court's findings in that regard may not be disturbed on appeal unless they are clearly erroneous. *In re Caldwell*, 851 F.2d 852 (6th Cir.1988).

It is Aetna's position that the filing of three successive bankruptcy petitions, each within a few days of its prosecution of state court foreclosure proceedings constitutes bad faith *per se*, placing the case in a stance for immediate dismissal. We cannot agree.

After reviewing the authority cited by the parties, and after further conducting our own research into the matter, we are convinced that the case of *In re Caldwell*, 851 F.2d 852 (6th Cir.1988) is dispositive of the motion now before us. Although *Caldwell* was decided under the provisions of chapter 13 and not under chapter 12, the wording of section 1325(a)(3) is identical to that of section 1225(a)(3). As a result, the opinion is persuasive precedent for cases filed under chapter 12. *Caldwell* is a factually bizarre case from Tennessee which involved certain judgment debts for false arrest, false imprisonment and malicious prosecution which had their genesis in the theft of a plastic "porch Santa." The debtor against whom the judgment had been rendered attempted to discharge the judgment debt in chapter 7. The bankruptcy court, however, determined the debt to be nondischargeable, presumably under 11 U.S.C. § 523(a)(6). Shortly thereafter the debtor moved to reopen his chapter 7 case, convert it to a case under chapter 13 and to

pay the judgment creditor approximately one half of the total debt owed. The bankruptcy court allowed reopening and conversion, and subsequently confirmed the debtor's proposed chapter 13 plan. The judgment creditor appealed.

In analyzing the concept of good faith, Judge Boggs stressed that "... no one factor should be viewed as being a dispositive indication of the debtors' good faith." *Caldwell*, at 860. Instead, the court must review the totality of the circumstances in order to decide whether the debtor's plan was proposed in good faith. Judge Boggs enumerated thirteen factors which may be considered, noting however that the list is not all inclusive. Relevant factors to be considered are,

"(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in Chapter 13 relief;

(11) the burden which the plan's administration would place upon the trustee; ...

(12) whether the debtor is attempting to abuse the spirit of the Bankruptcy Code and

(13) [the fact that] good faith does not necessarily require substantial repayment of the unsecured claims."

■ Aetna has cited the case of *In re Edwards*, 87 B.R. 671, 17 B.C.D. 1029 (Bankr.W.D.Okla.1988) which is factually similar to the case at bar. The bankruptcy court in *Edwards* considered the issue of good faith in so called "chapter 19" cases, where, as here, a chapter 7 case is closely followed by a chapter 12 filing. In rejecting the argument that "chapter 19" cases constitute bad faith *per se*, Judge Lindsey held that such successive filings constitute prima facie evidence of bad faith. As such, it then becomes incumbent upon the debtor to come forward with evidence which will affirmatively establish the existence of his good faith. We believe this to be a logical and well-grounded approach to the phenomenon of successive filings. Accordingly we adopt *Edwards'* reasoning.

We note further that the court in *Edwards* expressed considerable concern over the effect of "chapter 19" filings in two respects. First the discharge of unsecured debt in chapter 7 tends to undermine the provisions of section 1225(b)(1)(B), which requires submission of all of the debtor's projected disposable income to the plan over a three year period upon objection of an unsecured creditor. Second, the *Edwards* court also pointed out that "chapter 19" schemes would allow qualification of individuals as chapter 12 debtors whose operations bear little or no resemblance to the family farmer that Congress sought to assist when it enacted the current chapter 12 legislation. We hold similar reservations about "chapter 19" cases and will consider the effect of such filings when the proposed reorganization plan is considered for confirmation.

Aetna has also cited the case of *In re Binford*, 53 B.R. 307 (Bankr.W.D.Ky.1985) as dispositive of its motion to dismiss. However *Binford* deals with a debtor's proposed cure of a previously discharged arrearage in a chapter 13 plan, something that the debtor does not seek to accomplish in this case. In addition, while *Binford* is extremely instructive on the effect of a

discharge, it was decided in the context of confirmation, not on an earlier motion to dismiss. We believe that the issues raised by Aetna would be more properly considered at the confirmation hearing.

The final issue we now reach is Aetna's assertion that the quit claim conveyance by W.A. and Joetta Wickliffe of their interest in the encumbered property somehow revives the original debt, rendering the debtor ineligible for chapter 12 relief because his total debt would then exceed the debt ceiling. This argument is without merit as it was the debtor and the debtor alone upon whom personal liability for the note was positioned. Assuming, without deciding, the validity of this conveyance, its only effect would be to increase Aetna's claim against the land to an amount equal to its full value. Under this view of the effect of the conveyance, total debt remains under the chapter 12 debt limit.

This matter will be scheduled for a confirmation hearing at the earliest possible date on the court's calendar. Aetna's motion to recover the cost imposed upon it as a result of the aborted state court sale will also be considered at that time. An order consistent with the views expressed herein will be entered this day.