**In re William J. WALTON, Debtor.**

**Bankruptcy No. 1–89–03579.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

Feb. 5, 1990.

William J. Walton, Upper Sandusky, Ohio, pro se.

Bruce J. Beck, Carey, Ohio, for CSB.

John J. Hunter, Jr., Toledo, Ohio, for Agricultural Credit.

Webb I. Vorys, Columbus, Ohio, for Heart and Cancer.

Suzanne C. Mandross, Toledo, Ohio, Trustee.

## OPINION AND ORDER DISMISSING DEBTOR'S CASE AND PROHIBITING FURTHER PETITIONS FOR A PERIOD OF TWO YEARS

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter came on to be heard upon The Commercial Savings Bank's motion to dismiss and for sanctions, American Heart Association and American Cancer Society's memorandum in support of said motion and Debtor's objection thereto, at which the following appearances were made: Bruce J. Beck, attorney for the Commercial Savings Bank; Webb I. Vorys, attorney for American Heart Association and American Cancer Society; John J. Hunter, Jr., attorney for Agricultural Credit Corp.; Suzanne C. Mandross, chapter 12 trustee; and William J. Walton, Debtor, pro se. Debtor has also filed, this date, a post-hearing pleading titled "emergency notice and demand claim of ownership." Upon consideration thereof, the court finds that Debtor's case should be dismissed and that he should be prohibited from filing any petition for relief under the Bankruptcy Code for a period of two years.

### FACTS

Debtor, on December 11, 1989, filed a voluntary petition under chapter 12 of title 11. On January 9, 1990, Debtor filed his schedules listing four secured creditors having claims totalling $540,402 and four unsecured creditors having claims totalling $1,730,269.31. See Schedules A–2 and A–3. Debtor's schedules further indicate that his estimated currently monthly income is

from $100 to $35,000, "dependent on the final declaration of ownership of real property." See Schedule of Current Income. Also on January 9, 1990, Debtor filed an "affidavit of poverty" stating that he is presently unemployed.

On December 26, 1989, The Commercial Savings Bank (CSB) filed the instant motion to dismiss and for sanctions, alleging that this court lacks jurisdiction of this matter, "that there is a complete absence of any reasonable likelihood of any rehabilitation of the Debtor and for fraud." CSB states, and the court takes judicial notice, that Debtor previously filed a chapter 12 petition in this court on May 5, 1987. See Case No. 87–00984. That chapter 12 case was converted to a chapter 11 case and dismissed pursuant to court order on December 8, 1987. Subsequently, Debtor filed a chapter 12 petition in the U.S. Bankruptcy Court, Southern District of Ohio, Eastern Division, Case No. 2–88–05131, which petition was dismissed pursuant to court order as a result of Debtor's failure to qualify under chapter 12 and of improper venue.

Counsel for CSB further stated, and Debtor did not refute, that at his § 341 hearing Debtor stated he owns no farm equipment, that he has had no income since 1987 and that he has filed no income tax return since 1985. The chapter 12 trustee stated that it was her understanding, from Debtor's testimony at that hearing, that by filing the instant petition Debtor seeks to litigate the issue of ownership of several pieces of property. In fact, Debtor, in his objection, requests "that a hearing be held to settle such ownership issue."

Debtor's objection to CSB's motion states, and Debtor opined at the hearing held on January 31, 1990, that he does not own any property, but that if he does own property previously transferred to the Wheatly Company, which transfer was deemed fraudulent pursuant to a October 19, 1989 Wyandotte County Common Pleas Court Judgment Entry, then he is entitled to protect that property under title 11. See Notice of Filing of Supplemental Exhibits, Exhibit 1–A (January 12, 1990). Debtor insists this court previously determined that said transfer was lawful. These same assertions are repeated in Debtor's post-hearing pleading. *See supra.* Further, Debtor requested conversion of his case to a case under chapter 11 if the court finds he is ineligible for relief under chapter 12.

American Heart Association (Heart) and American Cancer Society (Cancer), on January 24, 1990, filed a memorandum in support of CSB's motion, reiterating that Debtor is ineligible for relief under chapter 12. Further, Heart and Cancer contend that Debtor should be sanctioned, prohibiting him from abusing the court system by filing repetitive bankruptcy petitions which result in considerable expenditure of time and expense, both judicial and private. Heart and Cancer have also filed a motion for relief from stay, seeking relief in order to foreclose their mortgage upon real property previously owned by Debtor and in which Debtor may continue to have an interest. Heart and Cancer's attorney orally requested resolution of that motion at the hearing held on CSB's motion. Heart and Cancer acknowledge that although record title is held by the Wheatley Company, said premises were conveyed to the Wheatley Company by Debtor and may have lacked consideration "such that Debtor could be deemed to be the true owner of the mortgaged premises." Motion for Relief from Stay at 3. Heart and Cancer assert that relief should be granted for the reason that "if the conveyance is deemed valid, then Debtor does not have an equity in the mortgaged premises and, as evidenced by the fact that Debtor voluntarily conveyed it, and the mortgaged premises would not be necessary to an effective reorganization. *Id.* at 4.

## DISCUSSION

*Res Judicata*

■ Initially, the court will address the land ownership issue. CSB seeks to foreclose upon property previously transferred from Debtor and his wife to the Wheatley Company, which transfer has been voided. See Notice of Filing of Supplemental Exhibits, Exhibit 1–1 at 1 (January 12, 1990).

CSB has a valid interest in said property and a sheriff's sale was ordered. *Id.* The sale was to occur on December 11, 1989, at 1:30 p.m. *Id.*, Exhibit 1–B. Debtor filed his petition on December 11, 1989 at 9:05 a.m. Debtor argues that he is not the owner of that property and that this court must "settle such ownership issue." Debtor further states that if he is the owner of the property, then, he is a farmer and is entitled to relief.

Contrary to Debtor's assertion at the hearing, there is no "division between courts" regarding ownership of this property and, unfortunately for Debtor, this court will not create one. The ownership of the property has been adjudicated by the Wyandotte County Common Pleas Court. *See supra* Exhibit 1–A. Reexamination of this issue is barred by res judicata. That is

> the precise issue in the later proceedings have been raised in the prior proceeding ... the issue was actually litigated and ... the determination was necessary to the outcome.

*Spilman v. Harley,* 656 F.2d 224, 228 (6th Cir.1981) (citations omitted). *See also In re Gaebler,* 88 B.R. 62, 18 B.C.D. 332 (E.D. Pa.1988); 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4416 at 136 (1981). The state court entry deeming the conveyance from Debtor to the Wheatley Company has finally adjudicated that issue. This court will not reexamine the conveyance. Debtor's assertions in his post-hearing pleading are not well taken. Further, Judge Barbara Sellers, Bankruptcy Judge for the Southern District of Ohio, before whom Debtor filed his second chapter 12 petition, also found that Debtor sought "reexamination of issues and facts already determined." *In re Walton,* 95 B.R. 514 (Bkrtcy.S.D.Ohio 1988). This court concurs. This court previously ruled upon the facts before it then, and will, accordingly do the same, now.

*Motion to Dismiss*

CSB seeks dismissal, in which Heart and Cancer join, of Debtor's case pursuant to 11 U.S.C. §§ 101, 109 and 1208. Section 109(f) provides that "only a family farmer with a regular annual income may be a debtor under chapter 12 of this title."

> Family farmer with regular annual income means family farmer whose annual income is sufficiently stable and regular to enable such family farmer to make payments under a plan under chapter 12 of this title.

11 U.S.C. § 101(18). Further, family farmer means—

> individual ... engaged in a farming operation whose aggregate debts do not exceed $1,500,000 ... and such individual ... receive from such farming operation more than 50 percent of such individual's ... gross income for the taxable year preceding the taxable year in which the case concerning such individual ... was filed.

11 U.S.C. § 101(17)(A).

■ Applying the statutory requirements to Debtor's case, the court finds that Debtor is ineligible for relief under chapter 12. Upon review of the record, the court finds that Debtor has no annual income and his aggregate debts exceed $1,500,000. On the basis of Debtor's own pleadings, he fails to qualify for chapter 12 relief. *See also Walton,* 95 B.R. at 515–16.

■ Further, Debtor's chapter 12 petition should be dismissed. As previously stated, and as listed in Debtor's statement of financial affairs, Debtor's instant chapter 12 petition represents the third petition filed in two different courts within the last three years. Debtor's original joint chapter 12 petition, filed May 5, 1987 and later converted to a chapter 11 case, was dismissed on December 8, 1987. That opinion and order of dismissal was affirmed on appeal. Debtor and his wife filed separate chapter 12 cases in the U.S. Bankruptcy Court for the Southern District of Ohio, in 1988; Debtor's petition was dismissed on January 25, 1989. *See Walton,* 95 B.R. 514. The instant chapter 12 petition was filed December 11, 1989.

■ The Code has an implied requirement of good faith in filing a bankruptcy petition, *In re Turner,* 71 B.R. 120 (Bkrtcy. D.Mont.1987), the lack of which is cause

for dismissal. *In re Natural Land Corp.,* 825 F.2d 296 (11th Cir.1987); *In re Albany Partners, Ltd.,* 749 F.2d 670 (11th Cir. 1984). *See also In re Wickliffe,* 106 B.R. 470 (Bkrtcy.W.D.Ky.1989) (good faith is an amorphous concept which is nonetheless tightly woven in fabric of cases under chapters 11, 12 and 13); *In re Hyman,* 82 B.R. 23 (Bkrtcy.D.S.C.1987); *In re Galloway Farms, Inc.,* 82 B.R. 486 (Bkrtcy.S.D.Iowa 1987) (number of courts consider lack of good faith as cause for dismissal).

■ In *In re Caldwell,* 851 F.2d 852 (6th Cir.1988), the court adopted a legal standard governing good faith as it applied to confirmation of a chapter 13 plan. Factors for the court's consideration are:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are in an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee.

\* \* \* \* \* \*

[supplemented with]

(1) whether the debtor is attempting "to abuse the spirit of the Bankruptcy Code," is a legitimate factor to consider;

(2) "good faith" does not necessarily require substantial repayment of the unsecured claims.

*Id.* at 859 (citations omitted). These factors were adopted and applied to determining Debtor's lack of good faith in filing a chapter 12 petition in *Wickliffe,* 106 B.R. at 473. *See also In re Edwards,* 87 B.R. 671, 17 B.C.D. 1029 (Bkrtcy.W.D.Okla.1988) (since chapter 12 was modeled after, and is substantially identical in many respects, to chapter 13, decisions under chapter 13 may be looked to in order to predict attitudes of courts to related issues which may arise under chapter 12).

■ This court concurs; chapter 13 good faith factors apply to chapter 12. Utilizing the sixth circuit's factors, the court finds most relevant Debtor's employment history, his frequency of seeking relief under the Code, his motivation and sincerity and his attempt to abuse the Code. As stated, Debtor has no income and has been without income since 1987. He has filed three petitions within the last three years. His motivation for seeking title 11 protection appears to be his "desire for delay and increase the already substantial costs incurred by other parties." *Walton,* 95 B.R. at 515. Additional evidence for dismissal of Debtor's case is supported by Debtor's filing, taken in response to CSB's foreclosure suit. In fact, Debtor admitted at the hearing that it was not his actions that caused the filing of the instant petition, but rather CSB's. Such conduct, filing in order to halt a foreclosure, frustrating legitimate efforts of a creditor to enforce its rights under state law, is further indicia of bad faith. *See In re Oakbrook Village, Inc.,* 108 B.R. 838 (Bkrtcy.S.D.Ga., 1989); *Galloway Farms, Inc.,* 82 B.R. at 490 (Debtor's multiple filings and involving creditor in extensive state court litigation for four years and filing the instant petition near the end of a state court action, frustrating and delaying creditor's ability to enforce its rights against Debtor, necessitated dismissal); *Turner,* 71 B.R. at 123 (Debtor's steps influenced by the foreclosure suit established that Debtor's sole motive in filing chapter 12 was to forestall or delay the foreclosure, therefore, petition dis-

missed). Finally, this court need not review the docket in Debtor's prior petition in this court, but need only think back to that time during which Debtor filed daily pleadings, innundating the court, causing an enormous expenditure of judicial resources. The court was patient during the pendency of that first petition, affording Debtor opportunities for hearings, but the court has given Debtor his days in court; he should not be permitted to continue to frustrate other interested parties seeking to enforce their rights and to consume substantial judicial time and expense.

Furthermore, a number of courts have held that a Debtor's successive filings constitute prima facie evidence of bad faith, necessitating Debtor's affirmative showing of the existence of good faith and a change in circumstances between the filings. *See Wickliffe,* 106 B.R. at 473; *Oakbrook Village, Inc., supra; Edwards,* 87 B.R. at 675 (chapter 12 petition filed soon after chapter 7 discharge should constitute prima facie evidence of bad faith, requiring Debtor to come forward with affirmative showing of good faith, including materially changed circumstances); *Hyman,* 82 B.R. at 24 (Debtor's showing of changed circumstances has been required in chapter 13 cases and the same test is applicable in chapter 12).

Upon review of the record, the court finds that Debtor has acted in bad faith and his petition should be dismissed. Further, Debtor should be prohibited from filing another petition for relief under the Bankruptcy Code for a period of two years. The court has found cause for dismissal with prejudice and, further, that Debtor's conduct mandates such prohibition. *See Lerch v. Federal Land Bank of St. Louis,* 94 B.R. 998 (N.D.Ill.1989); *Hyman,* 82 B.R. at 25.

*Relief from Stay*

Based upon the foregoing, Heart and Cancer's motion for relief from stay will not be addressed. However, if circumstances, unforeseen by this court, necessitate a hearing on said motion, a request for an expedited hearing will be granted. It is therefore.

ORDERED that Debtor's chapter 12 petition be, and it hereby is, dismissed. It is further

ORDERED that Debtor shall not file, and the Clerk of Court shall not accept from the Debtor for filing, another petition for relief under the Bankruptcy Code before February 5, 1992.