**In re William Matthew ROTH, Social Security No. 504–32–6136, and Bernice Marina Roth, Social Security No. 503–44–7549, Debtors.**

**Bankruptcy No. 93–40460.**

United States Bankruptcy Court,
D. South Dakota,
Southern Division.

May 20, 1994.

Douglas R. Kettering, Kabeiseman, Hosmer & Kettering, Yankton, SD, for movant Farm Credit Services.

John Harmelink, Harmelink & Fox Law Office, Yankton, SD, for debtors.

PEDER K. ECKER, Bankruptcy Judge.

The matter before the Court is a Motion to Dismiss Chapter 12 Bankruptcy filed by Yankton Attorney Douglas R. Kettering on behalf of Farm Credit Services [hereinafter "FCS"] and responded to by Yankton Attorney John Harmelink on behalf of Debtors. The motion implicates 11 U.S.C. § 1225 insofar as a Chapter 12 plan may only be confirmed if the petition is filed in good faith. FCS contends this Chapter 12 petition, which succeeds a previously filed Chapter 11 proceeding, was impermissibly filed to renegotiate or modify the previous plan of reorganization. This is a core proceeding under 28 U.S.C. § 157(b)(2). This letter decision constitutes Findings of Fact and Conclusions of Law as required by Federal Rule of Bankr. Procedure 7052.

## I.

Debtors filed a voluntary Chapter 11 petition January 9, 1985. On November 6, 1985, Debtors and Mitchell–Huron Production Credit Association [hereinafter "Mitchell–Huron PCA"] entered into a written agreement which settled all existing controversies. The settlement agreement, approved by the Court, was included in Debtors' Chapter 11 plan. The stipulation established Mitchell–Huron PCA's secured claim at $775,000, and it would accrue interest at the PCA variable rate beginning on the date of entry of an order of plan confirmation, which was February 12, 1986. As agreed, the claim was amortized over a 25–year term and called for monthly payments of approximately $7,000. At the end of 84 months, or roughly seven years, a balloon payment of approximately $571,800 would be due. FCS, an agricultural lending corporation, became entitled to the balloon payment as the named successor in interest to various Production Credit Associations, including the Mitchell–Huron PCA, which was melded into FCS pursuant to filings with the South Dakota Secretary of State.

In connection with the balloon payment, paragraph six of the agreement states:

The PCA agrees, however, that at the end of the term when the remaining balance is then due, that is, after seven years of monthly payments, that if all the payments had been made and if the debtors have maintained the collateral position of the PCA in that the then value of the collateral in which the PCA has a lien interest is about the same as the remaining balance due the PCA, then and in such event, the PCA agrees that it will negotiate in good faith towards an extension of this agreement for an additional seven year term.

Pursuant to this provision and in advance of the balloon payment due date, Debtors met with FCS officers to request a lesser interest rate and/or to renegotiate the balance of the loan. FCS maintains it refused those efforts because Debtors never actually proposed a restructured plan and, instead, merely discussed their ability to make future payments and, in that regard, indicated the possibility of having to file another bankruptcy petition. In any event, a renegotiation never materialized, and on July 27, 1993, Debtors filed a voluntary Chapter 12 petition.

FCS believes this second filing is an attempt to modify the previous Chapter 11 plan—an effort to "renegotiate" the previous FCS debt—which is an impermissible motive for filing a successive bankruptcy proceeding. FCS believes Debtors have not incurred any substantial new debt since the Chapter 11 proceeding and that the current case consists of the same creditors included in the original Chapter 11 case.[1] FCS relies primarily on *In re Miller,* 122 B.R. 360, 367 (Bankr.

---

1. The Chapter 11 creditors are summarized below:

| Secured Creditors: | | Unsecured Creditors: | |
|---|---|---|---|
| Mitchell–Huron PCA | $809,000. | Repair Creditor | $ 500. |
| FmHA | 49,000. | Independent Fertilizer | 1,000. |
| SBA | 35,300. | Standard Bulk | 5,800. |
| Federal Land Bank | 17,200. | Credit Management | |
| Deutsche Credit Corp. | 3,300. | Services, Inc. | 1,252.30 |
| Deutsche Credit Corp. | 28,800. | Feed Credit | 14,400. |
| Massey Ferguson Credit | 4,500. | | |
| Total | $947,100. | Total | $23,452.30 |

N.D.Iowa 1990), which declared: "[I]t is the finding of this Court that filing a successive Chapter 11 or Chapter 12 [case] after substantial consummation of a previously confirmed Chapter 11 case for the sole purpose of renegotiating previously agreed upon plan treatment is an impermissible motive for filing the successive case."

In response, Debtors contend that a successive filing, alone, is insufficient reason for dismissing a case. In this case, poor health forced Debtors to sell approximately one-half of their milk cows, creating a negative financial impact. Debtors testified they met with FCS officers to request a lower interest rate but were refused and told to make the balloon payment or face foreclosure. Undaunted, Debtors hired counsel to try to renegotiate the loan balance, as contemplated in paragraph six of the written stipulation, however, those efforts were equally unsuccessful. Next, Debtors contacted outside lending sources to obtain the necessary refinancing,

also without success. Finally, Debtors filed a Chapter 12 petition and indicate they have designed a plan in compliance with Bankruptcy Code requirements and believe none of the nine examples of "cause" set forth in 11 U.S.C. § 1208 [2] exist in this case. The motion should be denied.

## II.

There is no per se rule against successive filings. *In re Schuldies*, 122 B.R. 100, 101 (D.S.D.1990). Whether a successive bankruptcy petition is permissible is *always* a question of good faith, answered after a factual examination by the bankruptcy court. *Id.* at 102. A good faith examination of this kind requires the court to be wary of successive filings intended to frustrate the statutory requirements and abuse the bankruptcy process. *Id., citing In re Chisum*, 847 F.2d 597, 600 (9th Cir.1988). But the fact that a final decree has been entered in a previous Chapter 11 proceeding is only one of a myriad of factors to be considered,[3] such as:

The Chapter 12 creditors are summarized below:

| Secured Creditors: | | Unsecured Creditors: | |
|---|---|---|---|
| Farm Credit Services | $ 14,000. | (Priority) | |
| FmHA | 45,000. | Hutchinson County | |
| FmHA | 5,300. | Treasurer | $ 6,000. |
| PCAM, Farm Credit Services | 561,000. | (Nonpriority) | |
| SBA | 31,000. | McKennan Hospital | 900. |
| | | Medical X–Ray Center | 150. |
| Total | $656,300. | Total | $ 7,050. |

**2.** "Cause" for dismissing a case under Chapter 12 includes:

1. unreasonable delay, or gross mismanagement, by the debtor that is prejudicial to creditors;
2. nonpayment of any fees and charges required under chapter 123 of title 28;
3. failure to file a plan timely under section 1221 of this title;
4. failure to commence making timely payments required by a confirmed plan;
5. denial of confirmation of a plan under section 1225 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;
6. material default by the debtor with respect to a term of a confirmed plan;
7. revocation of the order of confirmation under section 1230 of this title, and denial of confirmation of a modified plan under section 1229 of this title;
8. termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; or
9. continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation.

11 U.S.C. § 1208(c).

**3.** The Eighth Circuit Court of Appeals has even opined that a previously concluded Chapter 11 proceeding "may obviate any argument that a subsequently filed petition constitutes an impermissible de facto conversion from a Chapter 11 to Chapter 12 proceeding." *In re Schuldies*, 122 B.R. at 102, *citing In re Erickson Partnership*, 856 F.2d 1068 (8th Cir.1988); *see In re Utne*, 146 B.R. 242, 248 (Bankr.D.S.D.1992).

- The length of time between the discharge of the Chapter 11 proceeding and the filing of the Chapter 12 petition;
- The question of whether or not the filing was made in order to obtain the favorable treatment of the congressionally-imposed automatic stay provisions of the bankruptcy law;
- The effort made to comply with the previously confirmed and substantially consummated Chapter 11 plan;
- The fact that Congress intended that a debtor achieve bankruptcy goals by the filing of a single case; and
- Any other facts the court finds to be relevant on the issue of good faith.

*In re Schuldies,* 122 B.R. at 103 (citations omitted). In other words, a determination of motivation for filing a successive petition requires consideration of the total circumstances surrounding the filing. *Id., citing In re Metz,* 820 F.2d 1495 (9th Cir.1987).

FCS relies on *In re Miller,* which portrays a set of facts indicative of bad faith, yet in its decision, the court also noted that a Chapter 12 filing *could* follow the confirmation of a previously filed Chapter 11. *In re Miller,* 122 B.R. at 365; *see also In re Grimes,* 117 B.R. 531 (Bankr. 9th Cir.1990); *In re Culbreth,* 87 B.R. 225 (Bankr.M.D.Ga. 1987). Observing Congress consciously chose not to prohibit a family farmer from filing a Chapter 12 case after having dealt with debts in a previous Chapter 11 proceeding, the *Miller* court concluded, "[I]t would be inappropriate for the Court to read such a prohibition into the law … prior relief under Chapter 11 would not bar relief under Chapter 12, provided that the debtor is acting in good faith and has demonstrated a genuine need for the relief available under Chapter 12." *In re Miller,* 122 B.R. at 366. A successive petition cannot, however, be used to evade the Section 1127(b) prohibition against modification of a substantially consummated Chapter 11 plan. The debtor must show good faith in formulating a successive plan. *Id., citing In re Kerr,* 908 F.2d 400, 404 (8th Cir.1990).

Factually, the Millers were debtors who negotiated a plan treatment with one of their major secured creditors, John Hancock. The treatment was incorporated into a confirmed Chapter 11 plan, however, only very sporadic payments were made, forcing John Hancock to seek relief from the automatic stay during the pendency of the Chapter 11 case, which, in turn, led to a mediated agreement whereby debtors promised to make certain payments or permit John Hancock to foreclose. *In re Miller,* 122 B.R. at 361–62. The required payments were never made, and on the eve of the foreclosure trial, debtors filed a Chapter 12 petition, staying the foreclosure action. Eventually, the bankruptcy court discovered the primary motive for the successive filing: debtors were dissatisfied with the agreements they negotiated with John Hancock during the Chapter 11 case, so dissatisfied, in fact, they filed a malpractice action against their bankruptcy attorney and obtained a $10,000 settlement, along with the right to extinguish the outstanding debt owed to the attorney. *Id.* at 363. This financial boost made it difficult for the court to understand why plan payments and delinquent real estate taxes could not be made. Difficult, that is, until the court learned debtors were purchasing two tracts of land that required substantial down payments. *Id.* The dilemma was still unresolved, however, since debtors had won $15,000 playing the Iowa State Lottery. *Id.* One other critical factor contributing to the court's decision to dismiss was the fact that a bank had been willing to grant debtors a refinancing loan, but debtors did not like the terms of the offer and decided to file the Chapter 12 petition in order to strike a better deal. *Id.*

This district has also had opportunity to make similar good faith examinations. *See In re Utne,* 146 B.R. 242 (Bankr.D.S.D.1992); *In re Coones Ranch, Inc.,* 138 B.R. 251 (Bankr.D.S.D.1991); *In re Gerth,* 116 B.R. 167 (Bankr.D.S.D.1989). Despite many personal tragedies and unanticipated legal expenses, the *Utne* court was not persuaded debtor was justified in his complete failure to make any payments to either FmHA or the unsecured creditors. *In re Utne,* 146 B.R. at 249. Other Chapter 11 secured creditors were paid in full (without explanation), but the only money FmHA received was an offset against a CRP payment made a few days before the Chapter 12 petition was filed; this, the court stated, was indicia of bad

faith—it was an attempt to reorganize the exact same FmHA debt dealt with previously, which circumvented FmHA's prior Section 1111(b) election. *Id.* It was an impermissible de facto modification of the Chapter 11 case. *Id.* Adding to the court's decision was the fact that after the Chapter 12 petition was filed, debtor sold and bought estate cattle out of the ordinary course of business, without court approval; failed to disclose on the Chapter 12 schedules some real property, feed on hand, a large trust account, and a bull; amended the schedules in an incomprehensible fashion; and submitted inaccurate income and expense attachments to the plan. *Id.* Based on these total circumstances, the court dismissed the case as a bad faith filing.

### III.

In contrast to the facts presented in cases like *In re Miller* or *In re Utne*, the total circumstances in this case do not indicate a lack of good faith or an impermissible motivation for filing this Chapter 12 petition. Here, the motivation was created by a bona fide change in circumstances demonstrating a genuine need for additional relief. Bona fide changes in circumstances may justify multiple filings. *In re Schuldies*, 122 B.R. at 101.

In 1985, the parties agreed the secured claim of Mitchell–Huron PCA would be amortized over a 25–year period and that Debtors would make monthly payments for seven years, after which, a balloon payment would be due and owing. The parties further agreed that if all payments were made after that seven-year period and if the collateral was maintained, PCA would negotiate in good faith a seven-year extension of the agreement. There is no indication Debtors were dissatisfied with the agreement, which might suggest this Chapter 12 filing was an attempt to strike a better deal. Rather, thwarted efforts at renegotiating a final balloon payment, necessitated by financial difficulties resulting from Debtors' poor health, justified this second filing.

There is no dispute, Debtors had an excellent repayment history. But after selling half the milk cow herd, Debtors were concerned about meeting the balloon obligation. Proactively, they met with FCS officials to request a lower interest rate. The request was denied. Debtors used hired counsel to make further attempts, but to no avail. Faced with foreclosure after making seven years of payments and after unsuccessful attempts to obtain outside refinancing, Debtors sought a Chapter 12 reorganization. These circumstances are not indicative of bad faith. Nor is their action tantamount to an impermissible post-confirmation modification or a de facto conversion of the prior Chapter 11 plan. Neither is there any evidence, nor even allegation of concealment, evasion, or direct violations of the Bankruptcy Code or court orders.

Debtors have tried, as Congress intended, to achieve their bankruptcy goals in a single bankruptcy case. That effort was prevented by circumstances beyond Debtors' control. The Court is satisfied this subsequent petition was never intended to frustrate or abuse the statutory purpose of the bankruptcy process. The motion is denied, and the Court shall enter an appropriate order.